*MHN*

*KC* F I L E D
*3-27-2008*
*MAR 27 2008*
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TONY HILLARD, )
Reg. No. B-58149, )
Danville Correctional Center )
)
     Petitioner )
)
vs. )
)
JOSEPH LOFTOS, Warden, )
Danville Correctional Center )
)
     Respondent )

08CV1775
JUDGE GETTLEMAN
MAGISTRATE JUDGE MASON

## HABEAS CORPUS PETITION PURSUANT TO 28 U.S.C. SECTION 2254

This is a Habeas Corpus Petition filed on behalf of a
State prisoner pursuant to 28 U.S.C. Section 2254.

### Procedural History

Defendant is incarcerated in Danville Correctional Center
under a sentence of 50 years imposed by the Honorable Michael
P. Toomin in Case No. 97-CR-30453.

Defendant's case was affirmed on direct appeal on June
11, 2001, People v. Hillard, No. 1-99-0152, Rule 23 Order.
Thereafter, defendant filed a pro se Post-Conviction Petition.
After counsel was appointed, an Amended Post-Conviction
Petition was filed. It was denied. The denial was affirmed on
appeal on June 15, 2007. Time to file a Petition for Leave to
Appeal was extended by order dated July 31, 2007 to August 20,
2007. The Petition for Leave to Appeal was denied on November
29, 2007.

## Statement of Facts

This Statement of Facts is created both from facts presented in the original Motion to Suppress and original trial, which were reviewed by the trial court in making its conclusion after hearing evidence in the post-conviction hearing and evidence presented in the post-conviction hearing.

On May 10, 1997, Yinka Jinadu entered the apartment of his estranged wife. He was there set upon, beaten and kidnapped by a number of men. He testified to a general description. His testimony was:

"Q:   Was he able to give you any name or physical description of the other three male black offenders?

A:   Yes.

Q:   What were those descriptions that he gave you?

A:   He described them as being in there twenties, one individual -- male blacks, one individual he had no height but for the weight was one sixty with brown eyes and black hair.

The second individual was five foot ten inches tall and he weighed -- No. Five foot eleven inches tall and he weighed two hundred pounds, black and brown eyes -- brown eyes and back hair.

The third offender was five foot eleven, one sixty-five, brown eyes, black hair. And another individual was five foot five, one forty-five, brown eyes, black hair."
(B-12-B-13)

2

During the investigation, it was determined that a gun found at the apartment was registered to Loretha Hillard, defendant's sister. She reported the gun missing on May 19, 1997.

At the Motion to Suppress, Det. Bradley testified that defendant's sister stated the gun had been taken and that if anyone took the gun, it would be her brother Tony. (Tr. B-18)

She advised the police where defendant lived. On June 3, 24 days after the information was received, the police went to the address given by the sister, that defendant at first did not admit to the name of Tony Hillard; defendant denied he took the gun; admitted his name and was arrested. He was identified at a line-up.

The trial judge, in denying the Motion to Suppress, stated:

"The central issue obviously to be resolved is whether this adds up to probable cause to arrest Mr. Hillard. What we have basically is a gun used in an armed robbery and a beating, recovered at the scene, linked to the sister of the defendant and then to Mr. Hillard. We have the defendant in a place where the sister indicated he would be, fitting the general description of one of the offenders and the defendant initially giving a phony name to the police. This adds up to reasonable grounds to believe that the defendant had committed an offense and probable cause to arrest him.

3

The motion to quash arrest and suppress evidence shall be denied." (B-112-113)

In a Supplemental Post-Conviction Petition, it was alleged in part that trial counsel was ineffective because counsel failed to present evidence, testimony of defendant's sister, refuting the assertion by Officer Bradley as to what defendant's sister is alleged to have told him.

The State's Motion to Dismiss was denied. At the hearing on the Post-Conviction Petition, defendant's sister testified she never told Det. Bradley that defendant could and/or would have stolen the gun. She testified only her sister knew where she kept her gun (Tr. 14F); that many relatives and friends would come to her apartment (Tr. 16F); people would be in her apartment when she was not home. (Tr. 17F) She testified she told Police Officer Bradley that she had no idea who took the gun (Tr. 21F); that she never told the police where Tony lived. (Tr. 21F) She testified she spoke to defendant's Public Defender, Ms. Bormann, a few times on the phone (Tr. 24F) and once in person in court. (Tr. 24F) She told Ms. Bormann that she never said to police that only defendant could have stolen the gun. (Tr. 24F) She told Ms. Bormann prior to the Motion to Suppress that she was ready and willing to testify. (Tr. 24F-25F) She testified she did not recall Ms. Bormann coming to her house.

Ms. Cheryl Bormann, the Assistant Public Defender who represented defendant at trial, testified at the post-

4

conviction hearing. (Tr. 42F) At the time of her testimony, she was a supervisor in the Public Defender's Office.

In the post-conviction hearing, defendant was represented by an Assistant Public Defender.

Ms. Bormann testified she and her 711 assistant met in person with defendant's sister at the sister's apartment (Tr. 49F, 50F, 51F) and the sister told her, Ms. Bormann:

"Q:  Did you ask her about whether Tony Hillard could have access to that gun?

A:  I specifically ask that question because that was the issue and she told me that yes Tony, like all of her other family members and friends, would have known where the gun was and could have had he wanted to make himself -- could have availed himself of the gun.

Q:  Did you also talk to her about a phone conversation she had with the police about that gun?

A:  I did.

Q:  And what did she tell you relative to that conversation?

A:  I asked her whether or not she had said to a police officer regarding the theft of the gun that the only person who could have stolen the gun was Tony Hillard.

I asked that specific question because that statement is contained in the police report in this case. She denied making that statement to a police officer.

5

She indicated instead that she told police officer

exactly what they told me, Mogul and I, that Mr. Hillard

along with many of her other acquaintances and family

members could have access to the gun." (Tr. 50F-51F)

She also testified it was her tactical choice not to call

Ms. Hillard.

The trial court rejected Ms. Hillard's version and

accepted that Ms. Bormann made a tactical decision not to call

Ms. Hillard. (Tr. 114F)

At the post-conviction proceeding, defendant was

represented by an Assistant Public Defender. Ms. Bormann who

originally represented defendant at trial was at the time of

the post-conviction proceedings a supervisor in the Public

Defender's Office.

<u>Argument</u>

1.

The decision of the District Court and the Court of Appeals on
the issue whether there was prejudice to defendant by
counsel's actions is contrary to the controlling facts and
contrary to the decision of the United States Supreme Court.

Although the State Appellate Court initially stated the

issue of effective assistance was waived, the Court did

consider the issue.

The State court relied on <u>People v. Robinson</u>, 299

Ill.App.3d 426.

<u>People v. Robinson</u>, 299 Ill.App.3d 426, 701 N.E.2d 231,

relied on by the Appellate Court, and the other cases relied

on in <u>Robinson</u> were factually very different than here. In

6

those cases, the police saw defendant shortly after the crime
in the general area of where the crime occurred. Here, where
the police saw defendant 20 or more days after the crime and
not in the vicinity of the crime and where the description was
very general, the general description, even when joined by the
other facts, cannot demonstrate probable cause. In Robinson,
supra, the court stated "Police stopped defendant shortly
after the incident occurred and in close proximity to the
scene of the crime." The other cases relied on by the court in
Robinson all related to incidents where the time and place
were in close proximity. The court in Robinson stated:

>"In People v. Wilson, 141 Ill.App.3d 156, 95 Ill.Dec.
>848, 490 N.E.2d 701 (1986), police received a description
>of a man with a gun walking north wearing a gray hat,
>maroon and gray striped sweater, black pants and a black
>coat.... The court noted that police saw defendant in the
>area described, his clothing matched the description
>given, and he was walking in the direction noted in the
>description....
>
>Likewise, in People v. Starks, 190 Ill.App.3d 503,
>137 Ill.Dec. 447, 546 N.E.2d 71 (1989), a defendant
>convicted of attempted murder and armed robbery argued
>that he was improperly stopped and arrested by police.
>The description of the robbery suspect included his race,
>approximate height and weight, and color and type of
>clothing. The defendant was stopped and arrested in a

7

vehicle approximately 20 minutes after the robbery and a
block and a half from the scene of the crime." (Emphasis
added.)

In Search and Seizure, Fourth Edition, LaFave, Section
3.4(c), p. 253, in a summary of the case law, it is concluded
where there is a most general description and the defendant is
seized long after the crime and not in the general vicinity,
there is no probable cause.

A review of the cases that deal with arrest based on
general suspicion would have advised defense counsel at trial,
defense counsel on appeal and defense counsel at post-
conviction hearing that the arrest in this case could not be
based on the general description. See in LaFave, supra, p.
254, case of Com v. Richards, 458 Pa. 455, 327 A.2d 63.

In the instant case, the description was very general and
did not contain the uniqueness of the description where
arrests have been upheld. (See LaFave, supra, p. 256.) Here,
the crime occurred on May 10 and defendant was arrested on
June 3. Also he was not seen in the general area of the crime.
Defense counsel at the Motion to Suppress failed to argue this
very important distinction and failed to support the argument
with case law. (Original Trial, Tr. B-96-B-109)

The law as set out in LaFave is so persuasive that only
total lack of effectiveness by counsel can explain the failure
to cite these cases.

If trial defense counsel would have researched the issue,

8

i.e., general description as basis for arrest, he would have found that such general description, as here, would not support an arrest when defendant is not seen shortly after the crime and in the general area of the crime.

The failure of a lawyer to research for controlling case law is ineffective assistance of counsel. See People v. Wright, 111 Ill.2d 18, 488 N.E.2d 973; Dixon v. Snyder, 266 F.3d 693 (7 Cir. 2001). The failure of counsel to investigate the law is equivalent to failure to investigate and find important exculpatory facts. Workman v. Tate, 957 F.2d 1339; People v. Truly, 230 Ill.App.3d 948, 595 N.E.2d 1230.

If defendant's Motion to Suppress his arrest had been granted, his out-of-court identification at the line-up must be suppressed, United States v. Crews, 445 U.S. 463, 63 L.Ed.2d 537, and the State could only present an in-court identification if it could prove there existed independent origin. United States v. Crews, supra. If the out-of-court or the in-court identifications had been suppressed, defendant would have probably been acquitted.

The State had conceded that on June 3 at defendant's house, defendant was arrested. Since the police had no warrant and did not observe defendant committing a crime, the State had the burden to prove there existed at the time of defendant's seizure probable cause to arrest defendant. People v. Talley, 34 Ill.App.3d 506, 340 N.E.2d 167.

The arrest of defendant was based primarily on a general

9

description. The victim testified:

"Q:  Was he able to give you any name or physical description of the other three male black offenders?

A:  Yes.

Q:  What were those descriptions that he gave you?

A:  He described them as being in there twenties, one individual -- male blacks, one individual he had no height but for the weight was one sixty with brown eyes and black hair.

The second individual was five foot ten inches tall and he weighed -- No. Five foot eleven inches tall and he weighed two hundred pounds, black and brown eyes -- brown eyes and back hair.

The third offender was five foot eleven, one sixty-five, brown eyes, black hair. And another individual was five foot five, one forty-five, brown eyes, black hair."
(B-12-B-13)

If trial counsel had provided effective assistance of counsel, no court could find under controlling law the existence of probable cause. In finding the existence of probable cause, the trial court (later adopted by the Appellate Court) found three facts when combined provided probable cause. They were:

(a) Defendant fit a general description of a person involved in a crime.

(b) The alleged statement of Loretha Hillard "That the

10

only person who would have taken her gun was her brother Tony Hillard." (00028)

(c) Defendant at first did not admit to his name.

The fact that defendant fit the general description was considered by the trial court and the Appellate Court as the most important fact in finding the existence of probable cause. Ruling of trial court. (Original Trial, Tr. B-112-B-113) There, the trial court stated:

"We have the defendant in a place where the sister indicated he would be, fitting the general description of one of the offenders and the defendant initially giving a phony name to the police. This adds up to reasonable grounds to believe that the defendant had committed an offense and probable cause to arrest him." (B-112-B-113)

The Appellate Court agreed.

Officer Brady testified defendant fit the general description of all the people described by the victim. (B-73) The Public Defender failed to effectively handle the facts referred to in paragraphs (a) and (b). Here, the general description relied on was a black man, 5'11", 165 pounds in his twenties. Defendant as 5'11", 170 pounds and 21. Although a general description may be a basis for an arrest under certain circumstances it cannot be, not under the circumstances here where there was a substantial time and location difference between the crime and the observation of defendant. The crime occurred on May 10. Defendant was

11

arrested on June 3. Defendant was not arrested in the vicinity
of the crime. For a general description to provide a basis for
arrest, defendant must be seen shortly after the crime and in
the vicinity of the crime.

The facts here demonstrate that applying the standard set
by the United States Supreme Court, the court would have found
ineffective assistance of counsel.

Defense counsel also failed to properly demonstrate that
any alleged statement concerning who could steal the gun has
no real value in proving existence of probable cause. This
statement, "That the only person who would have taken her gun
was her brother Tony Hillard." (C00028, Opinion of Appellate
Court), or as Det. Bradley testified, "If her gun was stolen
the only person who could have stolen it would have been her
brother." (Motion to Suppress, Original Trial, March 5, 1998,
Tr. B-20) are mere speculations. It is surmise. Such
speculation or surmise cannot rise to the level of probable
cause.

The other fact relied on by the court is not probable
cause. The mere fact that a person refuses to provide
cooperation with police investigation is not evidence of
guilt. Refusing to provide a name is not flight or physical
resistance. It is not probable cause.

The other ineffective act of defense counsel is failure
to call Ms. Hillard to testify she never told Police Officer
Bradley that the only person who could steal the gun was her

12

brother. Ms. Bormann testified she interviewed Miss Hillard
and was told she never stated that. (Tr. 51) Ms. Bormann
testified:

"Q:   Did you ask her about whether Tony Hillard
could have access to that gun?

A: I specifically ask that question because that was
the issue and she told me that yes Tony, like all of her
other family members and friends, would have known where
the gun was and could have had he wanted to make himself
-- could have availed himself of the gun.

Q:   Did you also talk to her about a phone
conversation she had with the police about that gun?

A:   I did."   (Tr. 50F-51F)

She testified she made a strategic decision not to call
Miss Hillard because of credibility concerns. (Tr. 54F, 79F)
She testified she was concerned that if she called Ms.
Hillard, evidence from her would be similar to that provided
by Det. Bradley. (Tr. 53F) She testified:

"Q:   Did you call Loretha Hillard at the motion to
quash arrest and suppress hearing?

A:   No.

Q:   Why not?

A:   Because Ms. Hillard, under oath made it very
clear that she would deny having that conversation with
the officer on the phone, placed a link between Ms.
Hillard on the gun in question. At that point no such

13

link other than hearsay was going to be made at trial and

I wanted to keep it that way."   (Tr. 53F)

She could have made a determination if such evidence would

have been admitted by making a pre-trial Motion in Limine. Her

decision was flawed by her failure to make a Motion in Limine

before the hearing on the Motion to Suppress. If she had, she

would have known if the court would have admitted (as it

ultimately did) Ms. Hillard's alleged statement to Officer

Bradley. If the court was to admit this evidence, no harm

would occur from providing the State with additional evidence

of defendant's possible connection to the gun. Surely, no harm

would have been done where Ms. Hillard would have testified

that many others also had availability to steal the gun.

Hence, an additional major defect in counsel's action was

making a strategic decision without conducting proper

investigation as to what evidence would be admitted. This is

the equivalent of not properly researching the proper law or

not investigating relevant facts. This is ineffective

assistance. See People v. Wright, 111 Ill.2d 18, 488 N.E.2d

973; Workman v. Tate, 957 F.2d 1339. Here, because of

ineffective assistance of counsel as described above,

defendant was prejudiced by defendant's illegal arrest and by

the out-of-court identification not being suppressed, and

possibly the in-court identification not being suppressed.

The decision of the State court as to whether there was a fair hearing with proper representation for defendant is also contrary to the decision of the United States Supreme Court.

The decision of the State court is contrary to the decision of the United States Supreme Court.

2.

The decision of the State court is contrary to the decision of the United States Supreme Court. The decision of the trial court denying defendant a new trial in a post-conviction hearing must be overruled because the Assistant Public Defender, Ms. Bormann, defendant's original trial counsel, who was accused of ineffective assistance of counsel in representing defendant, was a supervisor in the Public Defender's Office at the time of the post-conviction hearings, where defendant was represented by an Assistant Public Defender.

Defendant at a post-conviction hearing is not guaranteed effective assistance of counsel under the Sixth Amendment to the United States Constitution, People v. Harden, 217 Ill.2d 289, 840 N.E.2d 1205, and is only guaranteed the level of assistance of counsel guaranteed by the Post-Conviction Hearing Act, Harden, supra, i.e., "reasonable assistance." Defendant was denied such reasonable assistance. This defect interfered with defendant's ability to prove he was denied effective assistance of counsel at trial. Here, at the time of the post-conviction hearing, defendant's prior trial counsel, Ms. Bormann, who was accused of providing ineffective assistance of counsel, was now a supervisor in the Public Defender's Office. (Tr. 42F-43F) In People v. Banks, 121 Ill.2d 36, 520 N.E.2d 617, the court overruled its prior decision of People v. Smith, 37 Ill.2d 622, 230 N.E.2d 169. In

15

People v. Smith, supra, the court held a per se conflict
existed when one Public Defender must question the
effectiveness of another Public Defender. In People v. Banks,
supra, the court held that where such situation exists "a case
by case inquiry should be conducted to determine if there is
the presence of an actual conflict...." Banks, 121 Ill.2d at
44, 520 N.E.2d 617.

The court in Harden, supra, interpreting when a hearing
should be held, stated:

> "In the context of a potential conflict between two
> public defenders,... Relevant factors include ... whether
> they were in hierarchical positions where one supervised
> or was supervised by the other."(Emphasis added.)

Here, Ms. Bormann was a supervisor. This should have
required a hearing as to the relationship of Bormann and
Public Defender, Elyse Krug Miller.

In Banks, supra, the court held it is permissible for one
Public Defender to raise the ineffectiveness of another Public
Defender. The court stated:

> "Our subsequent cases, however, evidence our
> understanding of the special nature of public defender's
> offices where conflict of interest are concerned. Public
> defender's offices, we have recognized, are unlike
> private law firms for purposes of conflicts of interest.
> While a conflict of interest among any member of a

16

private law firm will disqualify the entire firm (*People v. Stoval* (1968), 40 Ill.2d 109, 239 N.E.2d 441), the disqualification of an assistant public defender will not necessarily disqualify all members of that office (*People v. Robinson* (1979), 79 Ill.2d 147, 37 Ill.Dec. 267, 402 N.E.2d 157). In *Robinson* it was urged that where an assistant public defender is disqualified by reason of a conflict of interest then all other assistants in that office should be *per se* disqualified since these other assistants' loyalty to their office would conflict with their loyalty to their clients. The court rejected this contention, reasoning that any such loyalty to one's office was too remote to justify a *per se* conflict of interest rule." (Emphasis added.)

The court's reasoning does not apply where one Public Defender alleged to be incompetent is a supervisor, i.e., in a superior position in the Public Defender's Office. An Assistant Public Defender may not want to jeopardize his job or his job assignment or other intangible benefits by too strenuously attacking a supervisor in the Public Defender's Office. The Assistant Public Defender making the attack may have a subliminal fear of "self-harm" by attacking a person with greater power--a supervisor in the Public Defender's Office. Here, there should have been a hearing.

The rule of People v. Banks, supra, is contrary to the

17

holding of other sister States. See <u>State v. Florida</u>, 617 So.2d 781 (State of Florida, 1993); <u>Ryan v. Thoms</u>, 261 Ga. 661, 409 S.E.2d 507 (Ga. 1991), cited with approval in <u>Ware v. State</u>, 267 Ga. 510, 480 S.E. 999 (Ga. 1997); <u>District Court for the Twenty First Judicial District v. Buss</u>, 783 P.2d 1223, Cal. Supreme Court. There, the court rejected the Illinois Rule. See <u>Angarano v. United States</u>, 329 A.2d 453 (D.C. App. 1974) rejecting <u>People v. Banks</u>, <u>supra</u> rule and adopting <u>People v. Smith</u>, 37 Ill.2d 622, 230 N.E.2d 169 (1967) rule.

The position in the above cases was based on United States Supreme Court precedent. This Court must re-evaluate the validity of <u>Banks</u>.

The Illinois Supreme Court in <u>People v. Banks</u>, <u>supra</u>, rejected the well-reasoned opinion in <u>People v. Smith</u>, <u>supra</u>, by distinguishing the loyalty of lawyers in a Public Defender's Office to the Public Defender's Office and to the other members of the Public Defender's Office, from the loyalty of private attorneys to their firms and other members of their firms.

This is an irrational distinction. It is unsupported by any data from any survey. It is based on an irrational presumption. Hence, it is unconstitutional. <u>Tot v. United States</u>, 319 U.S. 463, 87 L.Ed. 1514.

There is no real difference between how lawyers function in a private law firm and in a Public Defender's Office. The decision in <u>Banks</u> must be reconsidered.

## CONCLUSION

For any and all of the foregoing reasons, the petition for a writ of habeas corpus should be allowed.

Respectfully submitted,

FREDERICK F. COHN
Attorney for Petitioner
35 E. Wacker Drive
Suite 1525
Chicago, Illinois  60601
(312) 641-0692

19