IN THE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. TONY HILLARD, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | No.  08 C 1775 |
| KEITH ANGLIN, Warden, Danville Correctional Center,[1] | ) ) ) | The Honorable Robert W. Gettleman, |
| Respondent. | ) ) | Judge Presiding. |

## ANSWER TO PETITION FOR A WRIT OF HABEAS CORPUS

Pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts and this Court's order of May 7, 2008 (Doc. 10), respondent KEITH ANGLIN hereby files this Answer to petitioner's Petition for a Writ of Habeas Corpus, and states as follows:

## I.    PROCEDURAL HISTORY

1.     Petitioner Tony Hillard, identified as prisoner B58149, is incarcerated at the Danville Correctional Center in Danville, Illinois, where he is in the custody of Warden Keith Anglin.

---

[1] Keith Anglin is currently the warden at Danville Correctional Center where petitioner is presently imprisoned and therefore should be substituted in place of the named respondent Joseph Loftus.  *See* Rule 2(a) of the Rules Governing Section 2254 cases in the United States District Courts; Fed. R. Civ. P. 25(d)(1); *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (citing *Hogan v. Hanks*, 97 F.3d 189, 190 (7th Cir. 1996)); *Bridges v. Chambers*, 425 F.3d 1048, 1049-50 (7th Cir. 2005).

2.    In November 1997, petitioner was indicted in the Circuit Court of Cook County.  Petitioner filed a motion to quash his arrest and suppress evidence.  The trial court held a pre-trial hearing on March 4 and 5, 1998, and denied the motion. (Exhibit A).  Following a jury trial, petitioner was convicted of armed robbery, armed violence, aggravated kidnaping, and aggravated battery and was sentenced to 50 years' imprisonment.  (Exhibit E at 1; Exhibit Q at 1).  Assistant Public Defender (APD) Cheryl Bormann represented petitioner at the pre-trial hearing and at trial. (Exhibit M at 44F).  On direct appeal to the Appellate Court of Illinois, petitioner argued that:

> A.    the trial court erred in failing to grant his motion to quash arrest where the police lacked probable cause for the arrest;
>
> B.    it was error for codefendant's counsel to cross-examine the victim in front of defendant's jury where defendant and codefendant had antagonistic defenses;
>
> C.    the trial judge impermissibly acted as an advocate where he questioned a witness and clarified codefendant's aliases; and,
>
> D.    the trial court improperly sentenced defendant to consecutive sentences.

(Exhibit B at 1-4; Exhibit D at 1-2; Exhibit E at 1).  On June 11, 2001, the appellate court affirmed.  (Exhibit E at 1, 14).  Petitioner filed a pro se Petition for Leave to Appeal (PLA) in the Supreme Court of Illinois raising the first three arguments he raised in the appellate court.  (Exhibit F at 2).  Petitioner's PLA did not raise the fourth issue, the imposition of consecutive sentences.  The Supreme Court of Illinois

denied the PLA on October 3, 2001. (Exhibit G). Petitioner did not file a petition

for a writ of certiorari to the Supreme Court of the United States.

       3.      On August 23, 2001, petitioner filed a pro se postconviction petition

pursuant to the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1, *et seq.*, in

the Circuit Court of Cook County. (Exhibit H). APDs Cheryl Miller, George Dykes

and Mark Sanders were appointed to represent petitioner. Counsel filed a

supplemental petition on November 25, 2003. (Exhibit I). The State filed a motion

to dismiss the pro se and supplemental petitions on January 27, 2004. (Exhibit J).

On February 4, 2004, counsel filed a second supplemental petition. (Exhibit K).

The State filed an amended motion to dismiss on February 19, 2004. (Exhibit L).

Petitioner's filings raised three arguments:

      A.     the prosecution withheld exculpatory evidence in violation of
               *Brady v. Maryland*, 373 U.S. 83 (1963);

      B.     his 25 year sentence for armed violence should be vacated
               pursuant to the Supreme Court of Illinois's decision in *People v.
               Cervantes*, 189 Ill.2d 80 (1999); and

      C.     he received ineffective assistance of counsel at his pre-trial
               hearing on his motion to quash the arrest and suppress evidence
               because trial counsel failed to call Loretha Hilllard as a witness.

(Exhibit Q at 1). The trial court dismissed the *Brady* argument but granted a new

sentencing hearing on the *Cervantes* issue.[2] (*Id.* at 2). On April 28, 2004, the trial

---

    [2] On June 28, 2004, petitioner was resentenced to 15 years' imprisonment for
armed robbery, 20 years' for armed violence, and 20 years' aggravated kidnaping,
with the sentences running consecutively, for a total sentence of 45 years'
imprisonment. Petitioner did not appeal this new sentence.

court held a hearing on the allegation that counsel was ineffective for failing to call Loretha Hillard. At the conclusion of the hearing, the trial court issued an oral ruling denying the petition. (Exhibit M) On appeal, represented by present counsel Frederick F. Cohn, petitioner argued that:

> A.    he received ineffective assistance of postconviction counsel because his counsel worked in the same office as APD Bormann, who was a supervisor in the public defender office during the postconviction proceedings;
>
> B.    he received ineffective assistance of trial counsel because APD Bormann failed to perform necessary research on controlling law as to the suppression hearing issue, ineffective assistance of appellate counsel on direct appeal for failing to raise APD Bormann's allegedly ineffective legal research, and ineffective assistance of postconviction trial counsel for failing to raise the legal research issue; and
>
> C.    postconviction counsel failed to comply with Illinois Supreme Court Rule 651(c).

(Exhibit N at 1-2; Exhibit Q at 2). The appellate court affirmed on June 15, 2007. (Exhibit Q at 1, 2, 27). Petitioner filed a PLA in the Supreme Court of Illinois raising the same three arguments presented to the appellate court. (Exhibit R). The Supreme Court of Illinois denied the PLA on January 4, 2008. (Exhibit S).

4.    On March 27, 2008, petitioner filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). Petitioner alleges:

> A.    "The decision of the District Court and the Court of Appeals on the issue whether there was prejudice to defendant by counsel's actions is contrary to the controlling facts and contrary to the decision of the United States Supreme Court" (Doc. 1 at 6), and,
>
> B.    "The decision of the State court is contrary to the decision of the United States Supreme Court. The decision to the trial court

denying defendant a new trial in a post-conviction hearing must be overruled because the Assistant Public Defender, Ms. Bormann, defendant's original trial counsel, who was accused of ineffective assistance of counsel in representing defendant, was a supervisor in the Public Defender's Office at the time of the post-conviction hearing, where defendant was represented by an Assistant Public Defender." (Doc. 1 at 15).

5.    In compliance with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts, respondent has filed Exhibits A-T, with the Clerk of this Court, under separate cover:

Exhibit A:    Court Hearing and Ruling on Petitioner's Motion to Quash Arrest and Suppress Evidence, Circuit Court of Cook County (Mar. 4 and 5, 1998);

Exhibit B:    Petitioner's Opening Brief on Direct Appeal, *People v. Hillard*, No. 1-99-0152 (Ill.App.);

Exhibit C:    State's Brief on Direct Appeal, *People v. Hillard*, No. 1-99-0152 (Ill.App.);

Exhibit D:    Petitioner's Supplemental Brief on Direct Appeal, *People v. Hillard*, No. 1-99-0152 (Ill.App.);

Exhibit E:    Rule 23 Order, *People v. Hillard*, No. 1-99-0152 (Ill.App. June 11, 2001);

Exhibit F:    PLA to the Supreme Court of Illinois, *People v. Hillard*, No. 91958;

Exhibit G:    Order Denying PLA, *People v. Hillard*, No. 91958 (Ill. Oct. 3, 2001);

Exhibit H:    Petitioner's Pro Se Postconviction Petition, No. 97 CR 30453, Circuit Court of Cook County (Aug. 18, 2001);

Exhibit I:    Petitioner's Supplemental Postconviction Petition, No. 97 CR 30453, Circuit Court of Cook County (Nov. 25, 2003);

Exhibit J:    State's Motion to Dismiss Petitioner's Pro Se and Supplemental Postconviction Petitions, No. 97 CR 30453, Circuit Court of Cook County (Jan. 27, 2004);

Exhibit K:    Petitioner's Second Supplemental Postconviction Petition, No. 97 CR 30453, Circuit Court of Cook County (Feb. 4, 2004);

Exhibit L:    State's Amended Motion to Dismiss Postconviction Petitions, No. 97 CR 30453, Circuit Court of Cook County (Feb. 19, 2004);

Exhibit M:    Court Hearing and Ruling from the Bench Denying Petitioner's Postconviction Petition, No. 97 CR 30453, Circuit Court of Cook County (Apr. 28, 2004);

Exhibit N:    Petitioner's Opening Brief on Postconviction Appeal, *People v. Hillard,* No. 1-04-3365 (Ill.App.);

Exhibit O:    State's Brief on Postconviction Appeal, *People v. Hillard*, No. 1-04-3365 (Ill.App.);

Exhibit P:    Petitioner's Reply Brief on Postconviction Appeal, *People v. Hillard*, No. 1-04-3365 (Ill.App.);

Exhibit Q:    Rule 23 Order, *People v. Hillard*, No. 1-04-3365 (Ill.App. June 15, 2007);

Exhibit R:    PLA to the Supreme Court of Illinois, *People v. Hillard*, No. 105011;

Exhibit S:    Order Denying PLA, *People v. Hillard*, No. 105011 (Ill. Nov. 29, 2007); and

Exhibit T:    Transcript of Petitioner's Jury Trial, *People v. Hillard*, No. 97 CR 30453, Circuit Court of Cook County (July 13, 14, 15, 1998).

It is unnecessary to file the entire state court record with this Court at this time. *See Simental v. Matrisciano*, 363 F.3d 607, 612 (7th Cir. 2004) (decision of whether transcripts are necessary left to sound discretion of the district court; review of state court transcripts quite rare); *Kines v. Godinez*, 7 F.3d 674, 677 (7th

Cir. 1993) (where federal habeas petitioner does not "identify any inaccuracies or incompleteness" in the appellate court factual summaries, a federal habeas court may exclusively rely on those factual summaries in adjudicating the claims contained in the habeas petition). In compliance with Rule 5, respondent reports that the state court record, consisting of 10 volumes, is in the custody of the Circuit Court of Cook County.

## II.   FACTUAL BACKGROUND

The following factual recitation is taken from the state appellate court's decision on direct appeal, (Exhibit E), and postconviction appeal, (Exhibit Q), unless other citation is provided. The "state court factual findings . . . are presumed correct," and "the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'" *Rice v. Collins*, 546 U.S. 333, 338-39 (2006) (quoting 28 U.S.C. § 2254(e)(1)); *see, e.g.*, *Amerson v. Farrey*, 492 F.3d 848, 852 (7th Cir. 2007).

Yinka Jinadu, the victim, moved to the United States in 1994. (Exhibit E at 3; Exhibit Q at 3). He worked in a car dealership and later opened his own trucking company. (*Id.*) In 1995, he met and married Delores Jinadu, but the two separated in 1996. (*Id.*) In April 1997, Delores Jinadu began working as Yinka Jinadu's secretary. (*Id.*) On May 10, 1997, the day of the crime, when Delores Jinadu did not arrive at work as scheduled, Yinka Jinadu paged her to inquire about her location. (*Id.*) Delores Jinadu called Yinka Jinadu, she told him that her car was broken and asked him to come to her apartment so that he could give her a ride to

work. (*Id.*) Yinka Jinadu agreed and arrived at Delores Jinadu's apartment at 10:15 a.m. (*Id.*) Upon Yinka Jinadu's arrival, Delores Jinadu stated that she was not ready and asked him to come into the apartment and wait. (*Id.*)

Upon entering Delores Jinadu's apartment, Yinka Jinadu was struck over the head with a baseball bat and lost consciousness. (Exhibit E at 2; Exhibit Q at 3). When Yinka Jinadu awoke, he found that he had been stripped and his feet bound by electrical tape. (*Id.*) Delores Jinadu and three or four men were standing in the apartment. (*Id.*) One man was holding a baseball bat; another had a scarf covering the lower portion of his face. (*Id.*) A third man, later identified as Erven Walls, held a gun in his hand. (*Id.*) The man holding the baseball bat walked over to Yinka Jinadu, told him to keep his eyes closed and hit Yinka Jinadu over the head with a metal object. (*Id.*) Erven Walls also began repeatedly beating Yinka Jinadu on the head and around the eyes. (*Id.*) Erven Walls and the man with the baseball bat then pulled Yinka Jinadu into the bathroom, handcuffed him and put him into the bathtub. (*Id.*)

Petitioner came into the bathroom and put a gun into Yinka Jinadu's mouth, demanding that Yinka Jinadu tell him the location of his car and money. (*Id.*) He left the bathroom and returned with a pillow and his gun. (Exhibit E at 2; Exhibit Q at 3-4). Petitioner began to place the pillow over Yinka Jinadu's face but was stopped by the man holding the baseball bat. (Exhibit E at 2; Exhibit Q at 4). Erven Walls then entered the bathroom with handcuffs. (*Id.*) Erven Walls and

petitioner placed Yinka Jinadu's hands behind his back, handcuffed him and further taped his hands and legs.[3] (*Id.*) Over the next five hours, the perpetrators threatened Yinka Jinadu at gunpoint and demanded that he tell them where he kept his money. They eventually ended their interrogation of Yinka Jinadu, placed a towel over him, turned on the faucet in the bathtub and left. (*Id.*)

Around 7 p.m., Yinka Jinadu was able to free himself from the electrical tape binding his feet and he climbed out of the bathtub. (*Id.*) He opened the bathroom door and saw that he was alone in the apartment. (*Id.*) His hands were still bound by the handcuffs. (*Id.*) He left the apartment and walked onto the street, where he saw the man with the baseball bat and Erven Walls standing across the street. (Exhibit E at 2-3; Exhibit Q at 4). Seeing Yinka Jinadu, they fled down the street. (Exhibit E at 3; Exhibit Q at 4).

A boy from the neighborhood saw Yinka Jinadu on the street and ran to inform Chicago Police Officer Ramirez, who was patrolling the area. (*Id.*) Officer Ramirez saw Yinka Jinadu on the street, handcuffed, with an open head wound, and gray duct tape on his mouth and chin. (*Id.*) Yinka Jinadu led Officer Ramirez to Delores Jinadu's apartment, where the attack had occurred. (*Id.*) Officer Ramirez entered the apartment and saw hundreds of plastic bags, a scale, white powder, spoons and breathing masks. (Exhibit E at 3-4; Exhibit Q at 4). He also saw blood in the bathtub. (Exhibit E at 4; Exhibit Q at 4). Officer Ramirez

---

[3] The record is unclear as to whether there were one or two pair of handcuffs.

recovered two loaded revolvers and identification documents for Zachary T. Walls, Jerome Walls, Germaine Crane and Delores Jinadu.  (*Id.*)

While Officer Ramirez was inside the apartment, Chicago Police Officer Schmidt waited outside in the hallway with Yinka Jinadu.  (*Id.*)  Yinka Jinadu identified Delores Jinadu as one of his attackers, but he was unable to name any of the other offenders at that time.  (Exhibit E at 4; Exhibit Q at 4-5).  Yinka Jinadu also gave Officer Schmidt a height, weight and clothing description that matched Germaine Crane's identification information recovered from the apartment.  (Exhibit E at 4; Exhibit Q at 5).  Officer Schmidt testified at trial that he was unsure whether the identification information discovered in the apartment related to one person with various aliases or multiple people.  (*Id.*)

Chicago Police Detective Bradley spoke with Yinka Jinadu two days after the attack.  (Exhibit E at 4, 6; Exhibit Q at 5).  Yinka Jinadu told him that Delores Jinadu was one of his attackers.  (Exhibit E at 6).  He identified Erven Walls from a driver's license recovered from the apartment.  (*Id.*)  Yinka Jinadu told Detective Bradley that Erven Walls was Delores Jinadu's boyfriend and he had seen Erven Walls on prior occasions before the attack.  (*Id.*)  Yinka Jinadu also gave Detective Bradley physical descriptions of the three other offenders.  (*Id.*)  All three were in their twenties.  (*Id.*)  One offender was 5'11' weighing 200 lbs. with black hair and brown eyes.  (*Id.*)  The second was 5'11" and weighed 165 lbs.  (*Id.*)  The third offender was 5'5" and 145 lbs., with brown eye and black hair.  (*Id.*)  Yinka Jinadu

told Detective Bradley that the offenders demanded money and drugs during the attack. (Exhibit E at 5; Exhibit Q at 4).

Detective Bradley also learned that one of the two guns recovered from the apartment was registered to Loretha Hillard. (Exhibit E at 4, 6; Exhibit Q at 5). Detective Bradley telephoned Loretha Hillard; she told him that she was an former Chicago Housing Authority (CHA) security guard. (*Id.*) She informed Detective Bradley that her gun was missing and the only person who would have taken it was her brother, petitioner, Tony Hillard. (*Id.*) Loretha Hillard then gave Detective Bradley petitioner's address. (*Id.*)

Detective Bradley and other police officers then went to petitioner's apartment and knocked on the door. (Exhibit E at 6; Exhibit Q at 5). The record is undisputed that petitioner's girlfriend, Benicia Eberhardt, opened the door, but the witnesses testified to different versions of the subsequent events. (*Id.*) Detective Bradley testified that he saw Eberhardt standing at the door and petitioner standing directly behind her. (*Id.*) Petitioner matched one of the descriptions given to Detective Bradley by Yinka Jinadu. (*Id.*) Detective Bradley told Eberhardt and petitioner that he was looking for petitioner and also asked the man his name, but petitioner gave a fictitious name. (*Id.*) Detective Bradley asked petitioner why he had stolen his sister's gun and asked if petitioner would come to the police station. (*Id.*) Petitioner denied stealing the gun, but agreed to go to the station where he

was placed into a lineup and identified by Yinka Jinadu as one of his attackers.
(Exhibit E at 7; Exhibit Q at 5-6).

Eberhardt testified at the pre-trial hearing that when she opened the
apartment door, she saw three or four police officers standing in the hallway.
(Exhibit E at 5).  The officers pushed their way into the apartment and grabbed
petitioner.  (*Id.*)  They took him into the bedroom to get dressed while they searched
the apartment.  (*Id.*)  Petitioner was then handcuffed and taken to the police
station.  (*Id.*)  The trial court denied petitioner's motion to suppress and Yinka
Jinadu testified at trial to the out-of-court identification and identified petitioner in
open court.

After his conviction and completion of direct review, petitioner filed a
postconviction petition alleging, among other issues, that trial counsel was
ineffective for failing to call Loretha Hillard at the pre-trial hearing on the motion
to quash and suppress.  (Exhibit Q at 8).  At a April 28, 2004 hearing, Loretha
Hillard testified that she worked as a CHA security guard from 1993 to 1996 and
owned a gun.  (*Id.*)  On May 17, 1997, seven days after the attack on Yinka Jinadu,
Loretha Hillard called the police and reported that her gun was missing.  (*Id.*)
While agreeing that she spoke with Detective Bradley during his investigation, she
denied telling Detective Bradley that petitioner had taken her gun, and testified
that she told Detective Bradley that none of her family members would have taken
the gun because "they would not put her in jeopardy." (*Id.* at 8-9).

Loretha Hillard also testified that APD Bormann did not interview her in person prior to the suppression hearing, but did contact her by telephone approximately four times. (*Id.* at 9.) Loretha Hillard stated that she told Bormann that she did not know who took the gun and did not say that petitioner had taken her gun. (*Id.*) She also denied telling the police that petitioner had taken the gun, and further denied telling the police that her home was unlocked and that family members, including petitioner, could have accessed the gun in her home. (*Id.*) Although she did not testify at the pre-trial suppression hearing, she was ready and willing to do so at that time. (*Id.*) On cross-examination, Loretha Hillard admitted that she did not come forward with her story until she completed a postconviction affidavit almost three years after petitioner had been convicted, and fifteen days after the completion of petitioner's direct appeal. (*Id.*)

APD Bormann testified that she and her law clerks spoke to Loretha Hillard somewhere between two to six times in connection with petitioner's case. (*Id.*) She and her law clerks met Loretha Hillard in person on February 25, 1998 for approximately one hour in preparation for the then-upcoming suppression hearing. (*Id.*) Loretha Hillard told Bormann and her law clerks that: (1) she kept the gun under her mattress at home; (2) her friends and family knew the location of the gun; (3) her door was unlocked "about half the time" allowing anyone with knowledge of the gun to come into the home; (4) petitioner knew about the location of the gun and could have obtained the gun if he wanted it; (5) she told the police that petitioner,

along with other family members and friends could have taken the gun; and (6) she did not believe that her family or friends would have taken the gun because they would not have intentionally put her in jeopardy.  (*Id.*)

Bormann explained that in light of the interview, she concluded that she would not call Loretha Hillard to testify at the suppression hearing both because she did not find Loretha Hillard credible, and because Hillard would provide a link between petitioner and the gun found at the scene.  (*Id.* at 11).  Bormann testified at the hearing:

> I didn't call Loretha Hillard for a variety of reasons, one was I didn't think she was going to make a credible witness.  And I didn't think that Judge Toomin, who was going to be the trier of facts for the purposes of the motion was going to consider Ms. Hillard's testimony more credible that [*sic*] the officer's testimony; that was the issue for the purpose of the motion.

> Now the downside to calling Ms. Hillard at the motion was my biggest concern because if I called Ms. Hillard at the motion what would have happened [is] she would have been put under oath, sworn to testify and then testified prior to the trial in this case.

> At the trial, which I knew was going to be a jury at that point, I anticipated a couple of things: One was a single finder ID by the complainant in the case and then the possibility that gun records registered the gun to Ms. Hillard would be attempted to be introduced.

> I thought that I had a decent chance at that motion *in limine* to prevent the State from doing that very thing if they couldn't — the name Loretha Hillard, Tony Hillard because then the jury would be left to speculation to any sorts of relationships.  I didn't want to put Mr. [*sic*] Hillard under oath saying that Mr. Hillard, defendant, had an opportunity and access to steal the gun because that was given [*sic*] evidence to the State they didn't have.

(*Id.* at 11-12).  In rebuttal, Loretha Hillard: (1) admitted that it was possible that she met with Bormann, but she did not remember; (2) denied telling Bormann that petitioner knew where the gun was kept in her home; (3) did not recall whether she had been subpoenaed to appear at the suppression hearing.  (*Id.* at 12).  The trial court denied petitioner's ineffective assistance of counsel arguments.  (*Id.*)

## III.  PETITIONER'S ARGUMENTS BEFORE THIS COURT

Petitioner's allegations of ineffective assistance of counsel fail on the merits and two of the four allegations are also procedurally defaulted.  Petitioner's allegations that he did not receive reasonable assistance of postconviction counsel is non-cognizable on federal habeas review.  Consequently, this Court should deny the petition with prejudice.

### A.  Petitioner's Allegations of Ineffective Assistance Of Counsel Fail On The Merits And His Allegations Related To Trial Counsel's Legal Research And Legal Arguments At The Suppression Hearing Are Procedurally Defaulted.

Although petitioner presents one ineffective assistance of counsel point heading in his present petition, (Doc. 1 at 6), he raises four allegations of ineffective assistance of counsel.  First, he allegation that trial counsel failed to properly research the law related to the use of a general description as probable cause to support an arrest.  (Doc. 1 at 6-12).  This alleged deficiency resulted in a failure to provide the court with this case law during the suppression hearing.  Petitioner argues that there was no probable cause for his arrest and subsequent line up and that, if trial counsel had properly researched and argued the case law on this point,

the motion to suppress would have been granted and both the out-of-court and in-court identifications would have been suppressed. Without these identifications, petitioner argues that there is a reasonable probability that he would not have been convicted.

Second, petitioner alleges that he received ineffective assistance of appellate counsel and postconviction counsel because they failed to raise trial counsel's alleged ineffective assistance for failing to research and argue the controlling case law at the suppression hearing, as described above. (Doc. 1 at 8).

Third, petitioner alleges that trial counsel failed to demonstrate that the State's evidence at the suppression hearing did not establish probable cause for his arrest. Petitioner argues that the statement that Tony Hillard was the only person who could have stolen Loretha Hilllard's gun was "mere speculation. It [was] surmise. Such speculation or surmise cannot rise to the level of probable cause." (Doc. 1 at 12). Further, petitioner argues that his refusal to cooperate with the police by giving a false name was not evidence of flight and therefore could not support probable cause for the arrest. (*Id.*)

Finally, petitioner's argues that trial counsel was ineffective for failing to call Loretha Hillard during the suppression hearing.

1.    **Petitioner's First And Third Allegations Of Ineffective Assistance Of Trial Counsel Arguments — Trial Counsel's Alleged Failure To Research Controlling Case Law And Trial Counsel's Alleged Failure To Argue Controlling Case Law At The Suppression Hearing — Are Procedurally Defaulted.**

Petitioner's first and third allegations of ineffective assistance of trial counsel, alleging that trial counsel failed to research controlling case law and argue that law at the suppression hearing, are procedurally defaulted because the appellate court resolved the allegations on adequate and independent state procedural grounds.  As to the first allegation, the postconviction appellate court held:

> Defendant . . . argues that trial counsel was ineffective for failing to research and argue at the motion to suppress that "the arrest in this case could not be based on the general description" of the defendant that the victim gave to the police.  However, this claim is barred by *res judicata* and the waiver doctrine.

> A proceeding brought under the [Illinois] Post-Conviction Hearing Act [725 ILCS 5/122-1, *et seq.*] is a collateral attack on a judgment of conviction.  The principles of waiver and *res judicata* limit the scope of post-conviction review.  *People v. Winsett*, 153 Ill.2d 335, 346 (1992).  Consequently, the inquiry in a post-conviction petition is limited to allegations of constitutional violations that were not and could not have been raised previously.  *People v. Eddmonds*, 143 Ill.2d 501, 510 (1991).  The Illinois Supreme Court has held that "it is well established that determinations of the reviewing court on direct appeal are *res judicata* as to issues actually decided and issues that could have been presented on the direct appeal, but were not, are deemed waived."  *People v. Britz*, 174 Ill.2d 163, 177 (1996).

> In the instant case, defendant's allegations that [trial] counsel was ineffective for failing to argue that the description of him was "general" at the motion to quash arrest could have been raised on direct appeal.  In fact, on direct appeal, appellate counsel challenged other issues related to defendant's arrest including the finding of probable cause by the trial court after hearing the motion to quash arrest and suppress evidence.  Thus, the claim that trial counsel was ineffective for not

> focusing his argument on the general nature of the offender's
> description could have been brought on direct appeal, and is
> accordingly barred from consideration by this court.  *People v. Blair*,
> 215 Ill.2d 427, 443 (2005) (issues decided on direct appeal are *res
> judicata*).

(Exhibit Q at 20-21).  And as to the third ineffective allegation of assistance before

this Court, the appellate court held:

> Defendant next claims that trial counsel was ineffective for failing to
> investigate "what evidence would be admitted" when she decided not to
> call Loretha to testify at the motion to quash arrest and suppress
> evidence.  However, this claim was not raised in defendant's pro se or
> supplemental petitions for post-conviction relief, and is therefore
> waived.

(*Id.* at 22).

"Under 28 U.S.C. § 2254, before a state habeas petitioner is allowed to

pursue his claims in federal court, he must exhaust his remedies in the state

courts."  *Guest v. McCann*, 474 F.3d 926, 929 (7th Cir. 2007).  "Only if the state

courts have had the first opportunity to hear the claim sought to be vindicated in

the federal habeas proceeding does it make sense to speak of the exhaustion of state

remedies."  *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004) (quoting *Picard v.

Connor*, 404 U.S. 270, 275 (1971)).  Failure to properly exhaust state remedies and

the corresponding procedural default can occur in two distinct situations: (1) when a

petitioner fails to present his claim to the state court and the state court would now

bar the presentation of the claim; or (2) when the state court decides the claim on

the basis of an adequate and independent state procedural ground.  *Conner v.

McBride*, 375 F.3d 643, 648 (7th Cir. 2004) (citing *Coleman v. Thompson*, 501 U.S.

-18-

722, 729 n.1 (1991); *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)).  Petitioner's first and third ineffective assistance of counsel arguments are barred by adequate and independent state procedural grounds.

A federal court reviewing a petition brought under 28 U.S.C § 2254 "cannot consider a claim if [the court] determine[s] that 'the state decision rests on a state procedural ground that is independent of the federal question and adequate to support the judgment.'" *Grigsby v. Cotton*, 456 F.3d 727, 732 (7th Cir. 2006) (quoting *Page v. Frank*, 343 F.3d 901, 905 (7th Cir. 2003)).  "In order for the state court decision to be independent, the court must have 'actually relied on the procedural bar as an independent basis for its disposition of the case.'" *United States ex rel. Bell v. Pierson*, 267 F.3d 544, 556 (7th Cir. 2001) (quoting *Harris v. Reed*, 489 U.S. 225, 261-62 (1989); *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985)).  A state procedural rule is adequate when it is applied in a "consistent and principled" manner meaning that it is "firmly established and regularly followed." *Page v. Frank*, 343 F.3d 901, 909 (7th Cir. 2003) (citations omitted).  The state court's reliance on the state procedural bar must also be clear: "[a] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." *Jefferson v. Welborn*, 222 F.3d 286, 288 (7th Cir. 2000) (quoting *Harris*, 489 U.S. at 263).

Under Illinois law, "any claim of substantial denial of constitutional rights not raised in the original or an amended [postconviction] petition is waived" on postconviction review.  725 ILCS 5/122-3; *People v. Pendleton*, 861 N.E.2d 999, 1009 (Ill. 2006) (citing *People v. Jones*, 821 N.E.2d 1093, 1098 (Ill. 2004); *People v. Davis*, 619 N.E.2d 750, 755-56 (Ill. 1993)).  Additionally, "any issues considered by the court on direct appeal are barred by the doctrine of *res judicata*, and issues which could have been raised on direct appeal [but were not] are deemed waived" on Illinois postconviction review.  *People v. Harris*, 794 N.E.2d 181, 187 (Ill. 2002) (citing *People v. West*, 719 N.E.2d 664, 669-70 (Ill. 1999)).

The appellate court, the last court to render a decision on the merits, clearly and expressly held that it was denying petitioner's allegations on an adequate and independent state law procedural ground.  Allegation One was denied on the state law ground of waiver because it could have been raised on direct review.  (Exhibit Q at 20-21). Allegation Three was denied on the state law ground of waiver because it was raised for the first time on appeal and was not raised in petitioner's postconviction petitions before the trial court.  (*Id.* at 22).

The fact that the appellate court went onto consider the allegations on the merits does not excuse the procedural default.  "[A] state court need not fear reaching the merits of a federal claim in an *alternative* holding.  By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's

judgment, even if the state court also relies on federal law." *Harris*, 489 U.S. at 264 n.10 (citing *Fox Film Corp. v. Muller*, 296 U.S. 207, 210 (1935)) (emphasis in original). The appellate court clearly and expressly held that these allegations were barred by adequate and independent state procedural grounds and only discussed the merits of the federal constitutional allegations in the alternative.

Petitioner can demonstrate neither cause and prejudice nor the requisite fundamental miscarriage of justice necessary to excuse his procedural defaults. To demonstrate cause and prejudice, petitioner must show that an "objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule" such as: "(1) interference by officials that makes compliance impractical; (2) constitutionally ineffective assistance of counsel; [or] (3) a showing that the factual or legal basis for a claim was not reasonably available to counsel." *Guest*, 474 F.3d at 930 (quoting *McCleskey v. Zant*, 499 U.S. 467, 493 (1991); *Murray v. Carrier*, 477 U.S. 478 (1986)). "Fundamental miscarriage of justice . . . is limited to situations where the constitutional violation has probably resulted in a conviction of one who is actually innocent. To show 'actual innocence,' [petitioner] must present clear and convincing evidence that, but for the alleged error, no reasonable juror would have convicted him." *Dellinger v. Bowen*, 301 F.3d 758, 767 (7th Cir. 2002) (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

The only applicable excuse for petitioner's procedural defaults for Allegations One and Three would be to argue ineffective assistance of appellate counsel.[4]  *See Lee v. Davis*, 328 F.3d 896, 901 (7th Cir. 2003) (citing 529 U.S. 446, 453 (2000) ("The Supreme Court's decision in *Edwards v. Carpenter*, established that the assertion of ineffective assistance as a cause to excuse a procedural default in a § 2254 petition is, itself, a constitutional claim that must have been raised before the state court or be procedurally defaulted.")).  Petitioner argued an ineffective assistance of appellate counsel on postconviction appeal.  However, as discussed below, there is no merit to petitioner's ineffective assistance of appellate counsel argument.  Furthermore, to the extent that petitioner raises an ineffective assistance of postconviction counsel argument, it cannot constitute cause to excuse his default because there is no federal constitutional right to postconviction counsel.  *See Powell v. Davis*, 415 F.3d 722, 727 (7th Cir. 2005) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Pitsonbarger v. Gramley*, 141 F.3d 728, 737 (7th Cir. 1998) ("[W]hatever [a state's rules] may be with respect to state-provided counsel at the postconviction stage, as a matter of federal law a person has no such right.")); *see also Smith v. Battaglia*, 415 F.3d 649, 653 (7th Cir. 2005).  As petitioner's ineffective assistance of appellate counsel argument fails, it cannot satisfy the cause and prejudice requirement to excuse the defaults of Allegations One and Three.

---

[4]  Petitioner has not argued the fundamental miscarriage of justice gateway of actually innocence and would be unable to prove actual innocence.

It should also be noted that petitioner's exhaustion of his ineffective assistance of counsel arguments in Arguments Two and Four does not excuse his procedural default as to Arguments One and Three.  That all four arguments raise ineffective assistance of counsel allegations is not enough.  Although "[c]ounsel's work must be assessed as a whole [and] it is the overall deficient performance, rather than a specific failing, that constitutes the ground for relief," *Thompson v. Battaglia*, 458 F.3d 614, 616 (7th Cir. 2006) (quoting *Peoples v. United States*, 403 F.3d 844, 848 (7th Cir. 2005)), this Court must adhere to the principles of the procedural default rules and enforce defaults accordingly.  *Stevens v. McBride*, 489 F.3d 883, 894 (7th Cir. 2007).  The Supreme Court, in *Lambrix v. Singletary*, explained the reason for applying procedural default to arguments barred by an adequate and independent state law ground:

> Application of the "independent and adequate state ground" doctrine in federal habeas review is based upon equitable considerations of federalism and comity.  It "ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." *Coleman v. Thompson*, 501 U.S. 722, 732 (1991).  "A habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." *Id.*  If the "independent and adequate state ground" doctrine were not applied, a federal district court or court of appeals would be able to review claims that [the Supreme Court] would have been unable to consider on direct review." *Id.* at 730-31.

520 U.S. 518, 523 (1997).  Federalism and comity require enforcement of the procedural defaults as to Allegations One and Three because petitioner failed to adhere to state procedural requirements.

-23-

### 2.    Petitioner's Allegations Of Ineffective Assistance Of Counsel Fail On The Merits.

Petitioner's allegations of ineffective assistance of counsel fail on the merits under 28 U.S.C. § 2254(d).  Petitioner has preserved for § 2254(d) review only Allegations Two and Four.  But should this Court find that Allegations One and Three are not procedural defaulted, these arguments also fail on the merits under § 2254(d).

This Court applies the standards set forth in § 2254(d) to federal constitutional claims adjudicated on the merits by the state courts.  *See Muth v. Frank*, 412 F.3d 808, 814 (7th Cir. 2005).  The state appellate court's decision on postconviction appeal, (Exhibit Q), is the "relevant decision for purposes of [this Court's] assessment [as that decision] is the decision of the last state court to rule on the merits of the petitioner's claims."  *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006) (citing *McFowler v. Jaimet*, 349 F.3d 436, 446 (7th Cir. 2003)).  Pursuant to 28 U.S.C. § 2254(d), "[h]abeas relief must not be granted unless the state court's adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *Julian v. Bartley*, 495 F.3d 487, 492 (7th Cir. 2007) (quoting 28 U.S.C. § 2254(d)).

> To show that a decision was "contrary to" Supreme Court precedent, a petitioner can show that the state court reached a conclusion opposite

> to that of the Supreme Court on a question of law or that the state
> court decided a case differently than the Supreme Court "on materially
> indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).
> To show that a state court decision resulted in an "unreasonable
> application" of Supreme Court precedent, a petitioner must show that
> although the state court identified the correct rule of law, it
> unreasonably applied it to the facts of his case. *Id.* An unreasonable
> application is not simply what [a federal court] might deem to be an
> incorrect or erroneous application of federal law. The standard is not
> met just because a federal court might disagree with the decision of the
> state court.

*Huynh v. Bowen*, 374 F.3d 546, 548 (7th Cir. 2004).

"In *Strickland* [*v. Washington*, 466 U.S. 668 (1984)], the Supreme Court

announced the framework for assessing Sixth Amendment ineffective assistance of

counsel claims," *Goodman v. Bertrand*, 467 F.3d 1022, 1027 (7th Cir. 2006) (citing

*Williams*, 529 U.S. at 391), and "[t]he Supreme Court has reaffirmed this

framework repeatedly." *Raygoza v. Hulick*, 474 F.3d 958, 963 (7th Cir. 2007)

(citing *Rompilla v. Beard*, 545 U.S. 374, 380-81 (2005); *Wiggins v. Smith*, 539 U.S.

510, 521 (2003)). The burden of persuasion is on petitioner and "unsubstantiated

and largely conclusory statements fall far short of carrying his burden of

persuasion as to the two elements of the test outline in *Strickland*." *United States*

*v. Turcotte*, 405 F.3d 515, 537 (7th Cir. 2005) (citing *United States v. Davenport*,

986 F.2d 1047, 1049 (7th Cir. 1993)).

> A successful [ineffective assistance of trial counsel] claim under
> *Strickland* requires [petitioner] to make two showings. First,
> [petitioner] must show that counsel's performance fell below an
> objective standard of reasonableness as determined by prevailing
> professional norms. Second, [petitioner] must show that the deficient
> performance of counsel prejudiced his defense. Prejudice will be found

-25-

where there is a reasonable probability that, but for the deficient
performance of counsel, the outcome of the proceedings would have
been different.

*Whitman v. Bartow*, 434 F.3d 968, 972 (7th Cir. 2006) (citing *Strickland*, 466 U.S.

687-88, 692-94).

"In assessing counsel's performance, 'a court must indulge a strong

presumption that counsel's conduct falls within the wide range of reasonable

professional assistance.'" *Raygoza*, 474 F.3d at 962 (quoting *Strickland*, 466 U.S. at

689). "A lawyer owes his client a duty to make reasonable investigation or to make

a reasonable decision that makes particular investigations unnecessary." *Adams v.

Bertrand*, 453 F.3d 428, 436 (7th Cir. 2006) (citing *Strickland*, 466 U.S. at 691;

*Harris v. Cotton*, 365 F.3d 552, 555-56 (7th Cir. 2004); *Brown v. Sternes*, 304 F.3d

677, 691 (7th Cir. 2002); *Washington v. Smith*, 219 F.3d 620, 631 (7th Cir. 2000)).

However, "strategic choices made after thorough investigation of law and facts

relevant to plausible options are virtually unchallengeable; and strategic choices

made after less than complete investigation are reasonable precisely to the extent

that reasonable professional judgments support the limitations on investigation."

*Raygoza*, 474 F.3d at 962 (quoting *Strickland*, 466 U.S. at 690-91).

As to prejudice — a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different — "[a]

reasonable probability is a probability sufficient to undermine confidence in the

outcome." *Julian,* 495 F.3d at 498 (quoting *Strickland*, 466 U.S. at 693). "And, of

course, [the Court] conduct[s] this analysis through the lens of AEDPA's

unreasonableness standard, a standard that 'allows the state court's conclusion to

stand if it's one of several plausible outcomes.'" *McBride*, 489 F.3d at 893 (quoting

*Hall v. Washington*, 106 F.3d 742, 749 (7th Cir. 1997)).  Additionally, "a court need

not determine whether counsel's performance was deficient before examining the

prejudice suffered by [petitioner]." *Amerson*, 492 F.3d at 851 (quoting *Strickland*,

466 U.S. at 697) (citing *United States v. Birk*, 453 F.3d 893, 898-99 (7th Cir. 2006)).

The appellate court properly identified the governing *Strickland* standard

when evaluating petitioner's allegations:

> In order to establish a violation of the constitutional right to effective
> assistance of counsel, a criminal defendant must first show that
> counsel's performance was deficient in that it was objectively
> unreasonable, and second, that the deficient performance so prejudiced
> the defense that defendant was deprived of a fair trial.  *Strickland v.
> Washington*, 466 U.S. 668, 687 (1984); *People v. Albanese*, 104 Ill.2d
> 504 (1984).  In *People v. Albanese*, the Illinois Supreme Court adopted
> the *Strickland* rule, stating that "the benchmark for judging any claim
> of ineffectiveness must be whether counsel's conduct so undermined
> the proper functioning of the adversarial process that the trial cannot
> be relied on as having produced a just result." *Albanese*, 104 Ill.2d
> 525-26.  Moreover, any evaluation of counsel's conduct cannot properly
> extend into areas involving the exercise of judgment, discretion or trial
> tactics even where the appellate counsel or the reviewing court would
> have acted differently. *People v. Mitchell*, 105 Ill.2d 1, 12 (1984).  A
> defendant has the burden of demonstrating that he has received
> ineffective assistance of counsel.  *People v. Lundy*, 334 Ill.App.3d 819,
> 829 (2002).  A defendant's failure to make a requisite showing of either
> deficient performance or sufficient prejudice defeats an ineffective
> assistance of counsel claim.  *Strickland*, 466 U.S. at 697.

(Exhibit Q at 17).

An ineffective assistance of appellate counsel claim is also evaluated under the *Strickland* standard. Petitioner must demonstrate that appellate counsel's performance was deficient and that the deficiency prejudiced petitioner. *Suggs v. United States*, 513 F.3d 675, 678 (7th Cir. 2008) (citing *Strickland*, 466 U.S. at 668; *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1985)). "Appellate counsel's performance is deficient if counsel fails to appeal an issue that is both obvious and clearly stronger than one that was raised." *Winters v. Miller*, 274 F.3d 1161, 1167 (7th Cir. 2001) (citing *Williams v. Parke*, 133 F.3d 971, 974 (7th Cir. 1997)). "It is not necessary, however, that appellate counsel 'raise every non-frivolous issue under the sun.'" *Winters*, 274 F.3d at 1167 (quoting *Mason v. Hanks*, 97 F.3d 887, 893 (7th Cir. 1996)); *see also Knox v. United States*, 400 F.3d 519, 521 (7th Cir. 2005) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) (noting that the Sixth Amendment does not require appellate counsel to raise all non-frivolous issues and appellate counsel best serves a client on appeal by "winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most a few key issues.")).

As to the prejudice requirement, the ultimate question remains "whether, but for counsel's errors, there is a reasonable probability that the outcome of [the appeal] would have been different." *Mason*, 97 F.3d at 893 (citing *Freeman v. Lane*, 962 F.2d 1252, 1258 (7th Cir. 1992)). A district court determines whether prejudice exists by: (1) examining the trial court record to determine whether appellate

counsel failed to present "significant and obvious issues" on appeal; (2) comparing the "significant and obvious issues" that were not raised on appeal to those issues that were raised on appeal; and (3) determining whether the "significant and obvious issues" that were not raised were stronger than those presented. *See Mason*, 97 F.3d at 893 (internal quotations and citations omitted). "In addition, a petitioner demonstrates the requisite prejudice only when appellate counsel fails to raise an issue that 'may have resulted in a reversal of the conviction, or an order for a new trial.'" *Winters*, 274 F.3d at 1167 (quoting *Mason*, 97 F.3d at 893).      The appellate court properly identified this controlling standard as well:

> The Supreme Court of the United States has determined that a defendant is entitled to the effective assistance of counsel upon direct appeals which are allowed as a matter of right. *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985). The Illinois Supreme Court has held that a defendant who contends that appellate counsel rendered ineffective assistance, for example by failing to argue a particular issue, must show that "the failure to raise that issue was objectively unreasonable" and that, "but for this failure, his sentence or conviction would have been reversed." *People v. Caballero*, 126 Ill.2d 248, 270 (1986); *see also People v. Williams*, 209 Ill.2d 227 (2004). Both prongs of the *Strickland* test must be satisfied before [petitioner] can prevail on a claim of ineffective assistance of counsel. *Caballero*, 126 Ill.2d at 270. If the underlying issue is nonmeritorious, [petitioner] has suffered no prejudice. *People v. Rogers*, 197 Ill.2d 216, 223 (2001).

(Exhibit Q at 23).

Finally, it should be noted that petitioner's allegations, although involving Fourth Amendment issues, can only be analyzed pursuant to the Sixth Amendment right to effective assistance of counsel. Pursuant to *Stone v. Powell*, 428 U.S. 465 (1976), petitioner may not bring a free-standing Fourth Amendment claim on

federal habeas review when he has had a full and fair opportunity to litigate his

Fourth Amendment claims in the state courts.  *See Watson v. Hulick*, 481 F.3d 537,

541 (7th Cir. 2007); *Hayes v. Battaglia*, 403 F.3d 935, 939 (7th Cir. 2005).  However,

the Fourth Amendment issue is considered in the analysis of the Sixth Amendment

*Strickland* claim.  *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) (explaining

that the Fourth Amendment issue is an "element of proof" for the Sixth Amendment

claim); *Owens v. United States*, 387 F.3d 607, 609 (7th Cir. 2004) ("The holding of

*Kimmelman* [is] that the Sixth Amendment does provide a remedy for counsel's

failure to argue a Fourth Amendment defense.") (emphasis omitted).  "In order to

demonstrate actual prejudice where the principle allegation of ineffectiveness is

defense counsel's failure to competently litigate a Fourth Amendment claim,

[petitioner] must prove that the Fourth Amendment claim is meritorious and that

there is a reasonable probability that the verdict would have been different absent

the excludable evidence."  *United States v. Jackson*, 103 F.3d 561, 573 (7th Cir.

1996) (citations omitted); *see also Mosby v. Senkowski*, 470 F.3d 515, 519 (2d Cir.

2006); *Holman v. Page*, 102 F.3d 872, 873 (7th Cir. 1996) (Wood, D. J., dissenting

from rehearing *en banc*) (noting that petitioner's ineffective assistance of counsel

claims involving Fourth Amendment issues should be rejected if: (1) "the attorney's

conduct was within the range of professional competence tolerated by *Strickland*,"

(2) "the defendant's Fourth Amendment claim lacked merit," or (3) "even had the

evidence been excluded, [petitioner] would still have been convicted."); *United*

*States ex rel. Harris v. McCann*, __ F. Supp. 2d __, No. 07 C 454, 2008 WL 2346032, at *15 (N.D. Ill. June 5, 2008).

> **a.  Petitioner's First Three Arguments— Alleging Counsel Was Ineffective For Losing The Suppression Hearing — Fail On The Merits.**

Petitioner's first three ineffective assistance of counsel arguments all address the trial court's holding at the suppression hearing that probable cause supported petitioner's arrest and the subsequent out-of-court and in-court identifications by Yinka Jinadu.  Petitioner's first argument is that trial counsel was ineffective for failing to attack the "generalized" description; the second bootstraps this into an ineffective assistance of appellate counsel argument.  The third argument addresses Detective Bradley's testimony that Loretha Hillard told him that petitioner took her gun.  Petitioner argues that this statement is insufficient to create probable cause for his arrest.

"A warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been . . . committed."  *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).  "Probable cause is a commonsense nontechnical conception that deals with 'the factual and practical considerations of everyday life on which reasonable and prudent [people] not legal technicians, act.'" *United States v. Hobbs*, 509 F.3d 353, 359 (7th Cir. 2007) (quoting *Ornelas v. United States*, 517 U.S. 690, 695 (1996); *Illinois v. Gates*, 462 U.S. 213, 231 (1983)).  "Probable cause to arrest exists when officers 'possess knowledge from reasonable trustworthy information that is sufficient to warrant a

prudent person in believing that the suspect has committed, or is committing, a crime." *Hobbs*, 509 F.3d at 359-60 (quoting *United States v. Brown*, 366 F.3d 456, 458 (7th Cir. 2004)).

"When police officers obtain information from a[] . . . victim establishing the elements of a crime, the information is almost always sufficient to provide probable cause for an arrest in the absence of evidence that the information, or the person providing it, is not creditable." *Pasiewicz v. Lake County Forest Preserve Dist.*, 270 F.3d 520, 524 (7th Cir. 2001). "Police are entitled to act on information that may be inaccurate and let the courts determine whether to credit a suspect's claim of innocence." *Hernandez v. Sheahan*, 455 F.3d 772, 775 (7th Cir. 2006).

Here, Detective Bradley had both Yinka Jinadu's statement describing his attackers and Loretha Hillard's statement that her gun, which was found at the scene of the crime, was likely taken by her brother, petitioner. The police could reasonably credit Yinka Jinadu's allegations because he was found half naked in the street, beaten and led to the police back to the apartment where there was evidence of the attack as well as evidence of other criminal misconduct. Loretha Hillard's statement as testified to by Detective Bradley also supports a probable cause finding for multiple crimes — the attack on Yinka Jinadu, the theft of her gun and petitioner's unlawful possession of the gun. Taken as a whole, this evidence amply establishes probable cause for petitioner's arrest.

In piecemeal fashion, petitioner attacks each piece of evidence supporting probable cause for his arrest. However, probable cause is evaluated by viewing the

"totality of the circumstances at the time of the arrest" from the perspective of "common-sense interpretations of reasonable police officers." *United States v. Villegas*, 495 F.3d 761, 770 (7th Cir. 2007). Thus, viewing the evidence as a whole, it amply demonstrates sufficient probable cause for petitioner's arrest. The victim's description of his attackers matched petitioner. Petitioner's sister gave a statement that petitioner had likely stolen her gun. Petitioner sister's gun was found at the crime scene. And, petitioner gave a false name when first confronted by the police. As probable cause was present for petitioner's arrest, no ineffective assistance of counsel resulted; therefore, petitioner is not entitled to habeas relief because he cannot demonstrate that the appellate court decision was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States.

Finally, petitioner cannot demonstrate that even if he won his suppression hearing, he would not have been convicted at trial. In *United States v. Crews*, the Supreme Court refused to suppress a victim's in-court identification of a defendant even though the defendant had been unlawfully arrested. 445 U.S. 463, 471 (1980); *see also New York v. Harris*, 495 U.S. 14, 18-19 (1990); *Hayes v. Carter*, No. 98 C 6813, 2003 WL 21212598, at *10 (N.D. Ill. 2003). Yinka Jinadu's in-court identification was sufficient to convict petitioner, *see Hayes*, 403 F.3d at 938 ("[I]t is black letter law that testimony of a single eyewitness suffices for conviction even if 20 bishops testify that the eyewitness is a liar"); therefore, any ineffective

assistance of counsel argument must fail because petitioner cannot demonstrate a

reasonable probability that he would not have been convicted.

> **b.** **Allegation Four Also Fails On The Merits Because Trial Counsel Had A Strategic Reason For Not Calling Loretha Hillard At The Suppression Hearing.**

As explained above, petitioner was not prejudiced by his counsel's actions and

therefore did not receive ineffective assistance of counsel because there was

sufficient probable cause to support his arrest, and Yinka Jinadu's in-court

identification was sufficient to support his conviction.  Furthermore, as to

Allegation Four, trial counsel had a valid strategic reason not to call Loretha

Hillard at the suppression hearing.  As the appellate court discussed:

> Defendant first argues that trial counsel was ineffective for failing to call his sister, Loretha Hillard, to testify that she never told the police that the only person who could steal her gun was her brother.  Police Officer Bradley, who was defendant's arresting officer, testified at defendant's trial that Loretha told him that her brother was the only person who could have taken her gun. However, defendant claims that Loretha later told defendant's trial counsel that she never made the comment and that she would testify to that at trial.

> The trial court granted an evidentiary hearing on the issue of counsel's failure to call Loretha as a witness at the motion to quash arrest and suppress evidence. . . . [A] trial court's determination following an evidentiary hearing on a post-conviction petition will not be disturbed on review unless it is manifestly erroneous.  *People v. Morgan*, 212 Ill.2d 148, 155 (2004).

> Defendant's claim does not satisfy the first prong of the *Strickland* standard.  Generally, trial strategy will not support a finding of ineffective assistance of counsel.  *People v. Smith*, 177 Ill.2d 53, 92 (1997).  The decision to call a particular witness is typically a matter of trial strategy, and does not support a claim of ineffective assistance of counsel, particularly where the witness's testimony would have been

harmful to a defendant. *People v. Ward*, 187 Ill.2d 249, 261-62 (1999); *People v. Ashford*, 121 Ill.2d 55, 74-75 (1988).

At the evidentiary hearing, defendant's trial counsel [Bormann] testified that she interviewed Loretha and determined that her credibility would not outweigh Detective Bardley's credibility. *See People v. Dean*, 226 Ill.App.3d 465, 469 (1992) (no ineffective assistance of counsel where trial counsel did not call three witnesses because they were related to defendant and their credibility would carry little weight). Moreover, defendant's trial counsel indicated that Loretha's testimony would have established a direct link between defendant and the gun. Loretha's testimony could have brought out the fact that defendant had access to the gun and this could have been more detrimental to his case. *See People v. Simms*, 192 Ill.2d 592, 635 (2000) (counsel's failure to call a witness whose testimony had "clear risks" was not ineffective assistance). Given these facts it was an objectively reasonable trial tactic by counsel not to call Loretha to testify. We are mindful of the Supreme Court's admonishment in *Strickland* that "it is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence," and that, as a result, a court reviewing an ineffective assistance of counsel claim should make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. 689.

Defendant also cannot satisfy the second prong of the *Strickland* standard. To show prejudice, a defendant must establish that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *People v. Whitehead*, 169 Ill.2d 355, 380 (1996). In the instant case, the totality of the evidence, including the victim's identification of the defendant, the defendant's association with the codefendants, and the recovered gun, reflects that the outcome would not have changed with Loretha's testimony.

After the evidentiary hearing, the trial court found defendant failed to satisfy the *Strickland* standard for ineffective assistance of counsel. The trial court indicated that Loretha's testimony "detract[ed] from her credibility." The court concluded that "[t]his is not a situation where Ms. Bormann did not make an adequate investigation." The trial court

> noted that Bormann had contacted Loretha, met with her, observed her demeanor, and issued a subpoena, but was not required to call her as a witness. For the reasons previously discussed, the trial court's finding that defendant's trial counsel did not provide ineffective assistance of counsel was proper and the record reflected no manifest error.

(Exhibit Q at 17-20). Trial counsel Bormann's decision, after a thorough investigation of the law and facts, not to call Loretha Hillard to testify at the suppression hearing is a strategic decision to which *Strickland* demands deference. *See Raygoza*, 474 F.3d at 962 (quoting *Strickland*, 466 U.S. at 690-91) ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."). Further, trial counsel Bormann's decision was a wise one. Bormann recognized that Loretha Hillard's credibility would be impeached by the fact that she was petitioner's sister. *See Johnson v. Loftus*, 518 F.3d 453, 457 (7th Cir. 2008) (recognizing that witness with romantic or family relationship to defendant may be less credible); *Bergmann v. McCaughtry*, 65 F.3d 1372, 1380 (7th Cir. 1995) (citing *United States ex rel. Smith v. Lane*, 794 F.2d 287, 292-93 (7th Cir. 1986) ("As a matter of trial strategy, counsel could well have decided not to call family members as witnesses because family members can be easily impeached for bias.")). Additionally, calling Loretha Hillard would have provided a significant connection between petitioner and the crime — access to the gun found at the crime scene. As the appellate court recognized, calling Loretha Hillard would have done much more harm than good because it could have linked petitioner with the gun, arguably placing petitioner at the crime scene. Trial

counsel Bormann's strategic decision not to call Loretha Hillard demands deference under *Strickland* and therefore the appellate court decision was neither contrary to, nor an unreasonable application of clearly established federal law, because there was no *Strickland* violation.

### B. Petitioner's Allegation That He Received Ineffective Assistance Of Postconviction Counsel Is Non-Cognizable On Federal Habeas Review.

Petitioner's allegation of ineffective assistance of postconviction counsel is non-cognizable on federal habeas review. Specifically, petitioner argues that postconviction counsel was ineffective when addressing whether probable cause supported his arrest. (Doc. 1 at 8). He also argues that postconviction counsel suffered from a conflict of interest because they were from the same public defender office as trial counsel. (Doc. 1 at 15-18). As trial counsel was a supervisor in the public defender's officer, petitioner alleges that postconviction counsel was fearful of attacking trial counsel's performance so as to avoid jeopardizing their professional advancement. (*Id.*)

Federal habeas relief is not available for state law claims. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("It is not the province of a federal habeas court to reexamine state court determinations of state law questions."); *Lechner v. Frank*, 341 F.3d 635, 642 (7th Cir. 2003) (citing *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("Federal habeas corpus relief does not lie for errors of state law.")). "The right to assistance of counsel [under the Illinois Post-

Conviction Hearing Act] is a matter of legislative grace, and [under Illinois law] a defendant is guaranteed only the level of assistance provided by the Post-Conviction Hearing Act." *People v. Hardin*, 840 N.E.2d 1205, 1212 (Ill. 2005) (internal citations omitted). "[W]hatever [a state's rules] may be with respect to state-provided counsel at the postconviction stage, as a matter of federal law a person has no such right." *Powell*, 415 F.3d at 727 (citing *Finley*, 481 U.S. at 555; *Pitsonbarger*, 141 F.3d at 737); *see also* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under Section 2254."); *Coleman*, 501 U.S. at 752; *Simpson v. Battaglia*, 458 F.3d 585, 597 (7th Cir. 2006). This Court should deny petitioner's allegations as to the performance of his postconviction counsel because they raise only non-cognizable issues of state law.

## CONCLUSION

For the reasons set forth above, the petition for a writ of habeas corpus
should be denied.


July 1, 2008                              Respectfully submitted,

                                         LISA MADIGAN
                                         Attorney General of Illinois

                              By:    /s/ Charles Redfern
                                     CHARLES REDFERN, Bar # 6283811
                                     Assistant Attorney General
                                     100 W. Randolph Street, 12th Floor
                                     Chicago, IL 60601-3218
                                     PHONE: (312) 814-3565
                                     FAX: (312) 814-2253
                                     EMAIL: credfern@atg.state.il.us

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 1, 2008, I electronically filed respondent's **Answer To Petition For A Writ of Habeas Corpus** with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using the CM/ECF system.  A copy of this document was e-mailed via the CM/ECF system to:

>       Frederick F. Cohn
>       Frederick F. Cohn Limited
>       35 East Wacker Drive, Suite 1525
>       Chicago, Illinois 60601
>       fredcohn@ffcohn.xohost.com
>       Attorney for Petitioner

>       /s/ Charles Redfern
>       CHARLES REDFERN, Bar # 6283811
>       Assistant Attorney General
>       100 W. Randolph Street, 12th Floor
>       Chicago, IL 60601-3218
>       PHONE: (312) 814-3565
>       FAX: (312) 814-2253
>       EMAIL: credfern@atg.state.il.us