IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel.<br>    TONY HILLARD,<br><br>        Petitioner,<br>v.<br><br>KEITH ANGLIN, Warden,<br>    Danville Correctional Center,[1]<br><br>        Respondent. | No. 08 CV 1775<br><br>Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Petitioner Tony Hillard has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, claiming ineffective assistance of trial, appellate, and postconviction counsel. For the reasons below, the petition is denied.

## BACKGROUND

Following a jury trial in the Circuit Court of Cook County, Illinois, petitioner was convicted of armed robbery, armed violence, aggravated kidnaping, and aggravated battery, and was sentenced to an aggregate sentence of 50 years' imprisonment: consecutive sentences of 25 years for armed violence, 15 years for armed robbery, and 10 years for aggravated kidnaping.[2]

---

[1] Keith Anglin has replaced Joseph Loftus as the warden at Danville Correctional Center, where petitioner is imprisoned, and is thus the proper respondent. See Rule 2(a) of the Rules Governing Habeas Corpus Cases under 28 U.S.C. § 2254. Anglin is hereby substituted as respondent.

[2] The trial court granted in part petitioner's postconviction petition and held a new sentencing hearing, based on petitioner's argument that his 25 year sentence for armed violence should be vacated pursuant to People v. Cervantes, 189 Ill.2d 80 (Ill. 1999). On June 28, 2004, petitioner was resentenced to an aggregate sentence of 45 years' imprisonment: consecutive sentences of 20 years for armed violence, 10 years for aggravated kidnaping, and 15 years for armed robbery. Petitioner did not appeal this new sentence.

At trial, the victim testified to the following: On the morning of May 10, 1997, the victim's estranged wife, who was working as his secretary, was late to work, so he paged her. She called him back, explained that her car was not working, and asked him to pick her up at her apartment. When he arrived at her apartment around 10:15 a.m., she invited him to wait inside while she finished getting ready. As he entered the apartment, someone hit him over the head with a baseball bat, knocking him unconscious. When he awoke some time later, his clothing had been removed and his feet were bound together with electrical tape. He saw his wife and three or four other men in the room. One man was holding a bat in one hand and a gun in the other hand; a scarf covered the lower part of his face. Petitioner's codefendant, Erven Walls, held a gun. The man with the baseball bat and the gun walked over to the victim, told him to keep his eyes closed, and hit him on the head with an iron object. Then Walls walked over to the victim and hit him repeatedly on the head and around the eyes. The two men pulled the victim into the bathroom and placed him in the bathtub.

Petitioner then entered the bathroom, put a gun in the victim's mouth, and demanded that the victim tell him where he kept his money and his car. Petitioner left the bathroom, returning a few moments later with the gun and a pillow. Walls handcuffed the victim's hands behind his back and bound his legs and hands together with electrical tape. Petitioner began to cover the victim's face with the pillow, but the man with the bat stopped him. Over the next five hours, the men continued to threaten the victim at gunpoint, demanding to know where he kept his money. Eventually, the men presumably gave up. Petitioner placed a towel over the victim and turned on the bathtub's water faucet. The men left.

Around 7 p.m., the victim freed himself from the electrical tape binding his feet and, realizing he was alone in the apartment, walked outside onto the street. He saw the man with the

baseball bat and codefendant Walls standing across the street.  They noticed the victim and immediately fled.

Officer Ramirez testified that he was on patrol on May 10, 1997, when a young boy stopped him and directed him to the victim, who was standing on the street, handcuffed, with duct tape on his mouth and an open head wound.  The victim brought Officer Ramirez into his wife's apartment, where Officer Ramirez saw hundreds of plastic bags, a scale, white powder, spoons, and breathing masks, as well as blood in the bathtub.  He recovered two loaded revolvers and identification documents for petitioner, three other men, and the victim's wife.

Detective Bradley testified that he was assigned to follow-up investigation.  The victim provided him with petitioner's name, as well as his wife's name and the name of another individual whose identification Officer Ramirez had recovered.  When Detective Bradley arrested codefendant Walls and the victim's wife on September 17, 1997, he learned that one of the recovered guns was registered to Loretha Hillard, petitioner's sister.  During a phone conversation, Loretha informed Detective Bradley that petitioner was the only person who would have taken her gun, and gave him petitioner's address.

Detective Bradley arrived at the address with other officers.  A woman, Benicia Eberhardt, answered the door, and Detective Bradley saw a man standing behind her.  Detective Bradley asked him his name; petitioner responded with a fictitious name.  Detective Bradley asked petitioner why he had stolen his sister's gun, and petitioner responded that he had not stolen her gun.  When asked if he would accompany the officers to the police station to discuss the theft of his sister's gun, petitioner agreed, and then provided his real name but continued to deny knowledge of the gun's whereabouts.  The officers arrested him and took him to the police station, where the victim identified him in a lineup.

In November 1997, petitioner was indicted in the Circuit Court of Cook County. He filed a pretrial motion to quash his arrest and suppress evidence. After a hearing on March 4 and 5, 1998, the trial court denied the motion, finding that the detective who arrested petitioner had reasonable grounds to believe that petitioner had committed the offense and that probable cause to arrest him existed. At this hearing and at trial, petitioner was represented by Assistant Public Defender ("APD") Cheryl Bormann.

Petitioner appealed his conviction, arguing (among other things) that the trial court erred in failing to grant his motion to quash arrest when the police lacked probable cause for the arrest. The Illinois Appellate Court affirmed. People v. Hillard, No. 1-99-0152 (Ill. App. Ct. June 11, 2001) (unpublished order pursuant to Illinois Supreme Court Rule 23). Petitioner filed a pro se petition for leave to appeal ("PLA") to the Illinois Supreme Court, which was denied. People v. Hillard, No. 91958 (Ill. Oct. 3, 2001). Petitioner did not file a petition for a writ of certiorari to the Supreme Court of the United States.

On August 23, 2001, petitioner filed a pro se postconviction petition pursuant to 725 ILCS 5/122-1 et seq. in the Circuit Court of Cook County. APDs Cheryl Miller, George Dykes, and Marge Sanders were appointed to represent petitioner. They filed a supplemental postconviction petition on November 25, 2003. The State moved to dismiss the pro se and supplemental petitions on January 27, 2004. On February 4, 2004, petitioner filed a second (counseled) supplemental postconviction petition. The State filed an amended motion to dismiss on February 19, 2004. Petitioner argued: (1) the prosecution withheld exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963); (2) his 25-year sentence for armed violence should be vacated pursuant to People v. Cervantes, 189 Ill.2d 80 (Ill. 1999); and (3) he received ineffective assistance of counsel at the pretrial hearing on his motion to quash the arrest and

suppress evidence.

The court dismissed petitioner's Brady claim, granted a new sentencing hearing on the Cervantes issue (and resentenced him to 45 years' imprisonment), and granted an evidentiary hearing on the allegation of ineffective assistance of counsel based on trial counsel's failure to call petitioner's sister, Loretha Hillard, as a witness at the hearing on the motion to quash arrest. The evidentiary hearing was held on April 28, 2004. At its conclusion, the trial court issued an oral ruling denying the petition, finding that petitioner "failed to establish any credible basis for this court to warrant that he was denied effective assistance of counsel by [trial counsel's] failure to call Loretha Hillard as a witness at the suppression hearing." People v. Hillard, No. 97 CR 30453.

Represented by present counsel Frederick F. Cohn, petitioner appealed to the Illinois Appellate Court. Petitioner raised three arguments: 1) ineffective assistance of postconviction counsel because his counsel worked in the same office as APD Bormann, who was a supervisor in the public defender office during the postconviction proceedings; 2) ineffective assistance of trial counsel, appellate counsel on direct appeal, and postconviction trial counsel, all arising out of purported failures of legal research at the suppression hearing; and 3) postconviction counsel's failure to comply with Illinois Supreme Court Rule 651(c). The Appellate Court affirmed. People v. Hillard, No. 1-04-3365 (Ill. App. Ct. June 15, 2007). Petitioner filed a PLA to the Illinois Supreme Court, which was denied. People v. Hillard, No. 105011 (Ill. Nov. 29, 2007).

On March 27, 2008, petitioner filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner raises five ineffective assistance claims:

    A.    Trial counsel failed to properly research the law related to the use of a general

description as probable cause to support an arrest and failed to present the court with this case law during the suppression hearing. If the law had been properly researched and presented to the court, the court would have suppressed both the out-of-court and in-court identifications, without which reasonable probability exists that petitioner would not have been convicted.

  B. Appellate and postconviction counsel failed to raise trial counsel's alleged ineffective assistance, as described above.

  C. Trial counsel failed to demonstrate that no probable cause existed for petitioner's arrest.

  D. Trial counsel failed to call Loretha Hillard during the suppression hearing.

  E. Postconviction counsel suffered from a conflict of interest because trial counsel was their supervisor at the Office of the Public Defender (whom petitioner accused of ineffective assistance of counsel).

## DISCUSSION

### I. Legal Standards

**28 U.S.C. § 2254(d)**

Under the Antiterrorism and Effective Death Penalty Act of 1966 ("AEDPA"), 28 U.S.C. § 2254, a petitioner is not entitled to a writ of habeas corpus unless the challenged state court decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by the

Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to" the Court. Williams v. Taylor, 526 U.S. 362, 405-06 (2000).

A federal habeas court "may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Jackson v. Frank, 348 F.3d 658, 662 (7th Cir. 2003). The court can issue a writ only if it determines that the state court's application of federal law was "objectively unreasonable." Williams, 562 U.S. at 409. It is a difficult standard to meet, because unreasonable means "something lying well outside the boundaries of permissible differences of opinion." McFowler v. Jaimet, 349 F.3d 436, 447 (7th Cir. 2003).

**Procedural Default**

Further, before a state habeas petitioner pursues his claims in federal court, the AEDPA requires that he must exhaust his remedies in the state courts. 28 U.S.C. § 2254(b): Guest v. McCann, 474 F.3d 926, 929 (7th Cir. 2007). Failure to properly exhaust state remedies can occur in either of two situations: (1) when the petitioner fails to present his claim to the state court, and the state court would now bar presentation of the claim; or (2) when the state court has decided the claim on the basis of an adequate and independent state procedural ground. Conner v. McBride, 375 F.3d 643, 648 (7th Cir. 2004), citing Coleman v. Thompson, 501 U.S. 722, 729 n.1 (1991), and Ford v. Georgia, 498 U.S. 411, 423-24 (1991). If the petitioner's claims are not exhausted in state court, they are procedurally defaulted and a federal court may not consider them on the merits.

For a state's procedural ground to be adequate, it must be applied in a "consistent and principled" manner, meaning that it is "firmly established and regularly followed." Page v.

Frank, 343 F.3d 901, 909 (7th Cir. 2003) (citations omitted).  For the state court's decision to be independent, "the court must have actually relied on the procedural bar as an independent basis for its disposition of the case."  United States ex rel. Bell v. Pierson, 267 F.3d 544, 556 (7th Cir. 2001) (internal quotations omitted).  Further, the state court's reliance on the procedural bar must be clear: "[a] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar."  Jefferson v. Welborn, 222 F.3d 286, 288 (7th Cir. 2000), quoting Harris v. Reed, 489 U.S. 225, 263 (1989).

Under Illinois state law, "any claim of substantial denial of constitutional rights not raised in the original or an amended [postconviction] petition is waived" on postconviction review.  725 ILCS 5/122-3; People v. Pendleton, 861 N.E.2d 999, 1009 (Ill. 2006) (citations omitted).  In addition, "any issues considered by the court on direct appeal are barred by the doctrine of res judicata, and issues which could have been raised on direct appeal [but were not] are deemed waived" on Illinois postconviction review.  People v. Harris, 794 N.E.2d 181, 187 (Ill. 2002), citing People v. West, 719 N.E.2d 664, 669-70 (Ill. 1999).

A federal court may excuse procedural default if the petitioner demonstrates either cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice.  Coleman v. Thompson, 501 U.S. 722, 750 (1991).  To demonstrate cause and prejudice, the petitioner must show that an "objective factor external to the defense impeded [petitioner's] counsel's efforts to comply with the State's procedural rule," such as: "(1) interference by officials that makes compliance . . . . impractical; (2) constitutionally ineffective assistance of counsel; [or] (3) a showing that the factual or legal basis for a claim was not reasonably available to counsel."

Guest, 474 F.3d at 929 (internal quotations omitted). "Fundamental miscarriage of justice . . . is limited to situations where the constitutional violation has probably resulted in a conviction of one who is actually innocent. To show 'actual innocence,' [the petitioner must] present clear and convincing evidence that, but for the alleged error, no reasonable juror would have convicted him." Dellinger v. Bowen, 301 F.3d 758, 767 (7th Cir. 2002).

**Ineffective Assistance of Counsel**

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that his counsel's performance was deficient, and that counsel's deficient performance "prejudiced his defense" by demonstrating that it is reasonably likely that, but for his counsel's errors, a different decision would have been reached. Strickland v. Washington, 466 U.S. 668, 687, 696 (1983) Whitman v. Bartow, 434 F.3d 968, 972 (7th Cir. 2006). To show that counsel's performance was deficient, the petitioner must demonstrate that the representation "fell below an objective standard of reasonableness" and "outside the wide range of professionally competent assistance." Id. at 690. To satisfy the prejudice element, counsel's errors must be so serious as to have deprived the petitioner of a fair trial (i.e., one in which the result is reliable). Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993). "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by [the petitioner]." Strickland, 466 U.S. at 697.

The petitioner bears the burden of persuasion, and "unsubstantiated and largely conclusory statements fall far short of carrying his burden of persuasion as to the two elements of the test outlined in Strickland." United States v. Turcotte, 405 F.3d 515, 537 (7th Cir. 2005). The court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. "[S]trategic choices made

after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. at 690-91.

An ineffective assistance of appellate counsel claim is also evaluated under the Strickland standard. Suggs v. United States, 513 F.3d 675, 678 (7th Cir. 2008). "Appellate counsel's performance is deficient if counsel fails to appeal an issue that is both obviously and clearly stronger than one that was raised." Winters v. Miller, 274 F.3d 1161, 1167 (7th Cir. 2001). Appellate counsel need not, however, "raise every non-frivolous issue under the sun." Mason v. Hanks, 97 F.3d 887, 893 (7th Cir. 1996). As to prejudice, a district court determines whether prejudice exists by: (1) examining the trial court record to determine whether appellate counsel failed to present "significant and obvious" issues on appeal; (2) comparing the "significant and obvious issues" not raised on appeal to the issues that were raised on appeal; and (3) determining whether the "significant and obvious" issues not raised were stronger than those that were. See Mason, 97 F.3d at 893. Prejudice exists "only when appellate counsel fails to raise an issue that may have resulted in a reversal of the conviction, or an order for a new trial." Winters, 274 F.3d at 1167 (quoting Mason, 97 F.3d at 893).

"[T]o demonstrate actual prejudice where the principal allegation of ineffectiveness is defense counsel's failure to competently litigate a Fourth Amendment claim, the defendant must prove that the Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence." United States v. Jackson, 103 F.3d 561, 573 (7th Cir. 1996) (citations omitted).

## II. Ineffective Assistance of Trial Counsel

Petitioner raises three claims alleging ineffective assistance of his trial counsel (claims A, C, and D), none of which is meritorious.

### A. Claims A and C Are Procedurally Defaulted

Claim A alleges that petitioner's trial counsel was ineffective because she failed to properly research the law related to the use of a general description as probable cause to support an arrest, and subsequently failed to present this case law during the suppression hearing. Petitioner claims that no probable cause existed for his arrest and the subsequent lineup, from which the victim identified petitioner, and if trial counsel had properly researched and argued the applicable case law, the court would have granted petitioner's motion and both the out-of-court and in-court identifications would have been suppressed.

Because the Illinois Appellate Court resolved this issue on adequate and independent state procedural grounds, it is procedurally defaulted. That court explicitly held that petitioner had waived the claim, which he could have—but did not—raise on direct appeal. Further, the court clearly stated that it was denying petitioner's allegations on an adequate and independent state law procedural ground. Finding that petitioner could have raised this allegation on direct review, the court denied it based on the state law ground of waiver. Because the AEDPA requires state habeas petitioners to exhaust all state court remedies before pursuing claims in federal court, Claim A is procedurally defaulted.

Claim C alleges that trial counsel provided ineffective assistance by failing to demonstrate that the State's evidence at the suppression hearing did not establish probable cause for his arrest. Petitioner argues that his refusal to cooperate with the police (by offering a false name) was not evidence of flight, and therefore could not support probable cause for the arrest;

he also argues that the statement that petitioner was the only person who could have stolen Loretha Hillard's gun was "mere speculation" and "surmise," which "cannot rise to the level of probable cause."

This claim is procedurally defaulted because petitioner could have, but chose not to, raise it on direct appeal. The Illinois Appellate Court explained that "this claim was not raised in defendant's pro se or supplemental petitions for postconviction relief, and is therefore waived."

Further, neither of the exceptions to procedural default applies to Claims A and C. Petitioner has not alleged a fundamental miscarriage of justice and has made no showing that, but for trial counsel's alleged ineffective assistance, no reasonable juror would have convicted him. Dellinger, 301 F.3d at 767 ("To show 'actual innocence, [petitioner] must present clear and convincing evidence that, but for the alleged error, no reasonable juror would have convicted him."). Petitioner's only feasible argument is based on alleged ineffective assistance of appellate counsel. As discussed below in Part III, that argument, however, is not meritorious. Therefore, it cannot satisfy the cause and prejudice requirement to excuse procedural default.

**B.     Claim D Fails on the Merits**

Claim D, which alleges that trial counsel's failure to call Loretha Hillard during the suppression hearing constituted ineffective assistance, fails on the merits.[3] Petitioner does not, and cannot, satisfy either prong of the Strickland test.

Petitioner cannot show prejudice because that prong requires him to "prove that the

---

[3] Even if Claims A and C were not procedurally defaulted, they would also fail on the merits, for analogous reasons. All three claims address the same issue: whether petitioner's trial counsel was ineffective at the suppression hearing in which the trial court held that probable cause supported the petitioner's arrest and subsequent out-of-court and in-court identifications of him by the victim.

Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence," Jackson, 103 F.3d at 573, and he can prove neither.

First, petitioner's Fourth Amendment claim has no merit. Taken as a whole, the evidence established probable cause for petitioner's arrest. "When police officers obtain information from a[] . . . victim establishing the elements of a crime, the information is almost always sufficient to provide probable cause for an arrest in the absence of evidence that the information, or the person providing it, is not creditable." Pasiewicz v. Lake County Forest Preserve Dist., 270 F.3d 520, 524 (7th Cir. 2001). In the instant case, Detective Bradley had the victim's statement providing a general description of his attackers. Further, because the victim was found immediately after the attack and led the police to the apartment where the evidence was recovered, Detective Bradley could reasonably credit the victim's allegations and general description. Moreover, Detective Bradley had Loretha Hillard's statement that petitioner had likely taken her gun (found at the crime scene). Taken together, this evidence supports a finding of probable cause.

Second, petitioner cannot demonstrate that even if he won the pretrial hearing, he would not have been convicted at trial. Even if the trial court had found that petitioner's arrest was unlawful, it does not follow that the court would have suppressed the victim's in-court identification. United States v. Crews, 445 U.S. 463, 471 (1980). That in-court identification was sufficient to convict petitioner. See Hayes v. Battaglia, 403 F.3d 935, 938 (7th Cir. 2005) ("[I]t is black letter law that testimony of a single eyewitness suffices for conviction even if 20 bishops testify that the eyewitness is a liar."). As the Illinois Appellate Court reasoned, "the totality of the evidence, including the victim's identification of [petitioner], [petitioner's]

association with the codefendants, and the recovered gun, reflects that the outcome would not have changed with Loretha's testimony." Petitioner therefore cannot demonstrate a reasonable probability that he would not have been convicted if he won the suppression hearing.

Moreover, even if petitioner could satisfy the prejudice prong of the Strickland test (which he cannot do), he cannot establish that his trial counsel's performance was deficient. Petitioner's trial counsel's decision not to call Loretha Hillard was a valid trial strategy. At the postconviction evidentiary hearing held by the Illinois trial court, petitioner's trial counsel testified that she interviewed Loretha and determined that her credibility would not outweigh Detective Bradley's credibility. See Johnson v. Loftus, 518 F.3d 453, 457 (7th Cir. 2008) (recognizing that witness with family relationship to the defendant may be less credible); Bergmann v. McCaughtry, 65 F.3d 1372, 1380 (7th Cir. 1995), citing United States ex rel. Smith v. Lane, 794 F.2d 287, 292-93 (7th Cir. 1986) ("As a matter of trial strategy, counsel could well have decided not to call family members as witnesses because family members can be easily impeached for bias."). Petitioner's trial counsel further testified that Loretha Hillard's testimony would have established that petitioner had access to the gun. Trial counsel thus made an objectively reasonable determination not to call Loretha Hillard to testify at the suppression hearing. Strickland, 466 U.S. at 690-91; Raygoza, 474 F.3d at 962.

### III. Ineffective Assistance of Appellate Counsel: Claim B

Claim B alleges that petitioner's appellate counsel were ineffective because they failed to raise trial counsel's alleged ineffective assistance for failing to research and arguing the controlling case law at petitioner's suppression hearing (Claim A). This claim is not procedurally defaulted, but it fails on the merits.

Petitioner cannot meet the Strickland standards, which require him to show that appellate

counsel's performance was deficient and that the deficiency prejudiced petitioner. Suggs, 513 F.3d at 678 (7th Cir. 2008). Essentially, to show appellate counsel's deficiency, petitioner would have to first establish that trial counsel was ineffective for failing to argue the case law regarding general descriptions. As discussed above in Part II, the evidence presented at the pretrial hearing established probable cause for petitioner's arrest. Appellate counsel's performance is deficient only if "counsel fails to appeal an issue that is both obvious and clearly stronger than one that was raised," Winters, 274 F.3d at 1167. This is certainly not the case here. Further, petitioner cannot establish prejudice (i.e., that a reasonable probability exists that the outcome of the appeal would have been different but for counsel's errors). This was not a "significant and obvious" issue, Mason, 97 F.3d at 898, and because it lacks merit, raising it would not have changed the outcome of the appeal. Winters, 274 F.3d at 1167. Claim B therefore fails.

## IV. Ineffective Assistance of Postconviction Counsel: Claim E

Finally, Claim E alleges that petitioner's postconviction counsel were ineffective because they failed to raise trial counsel's alleged ineffective assistance for failing to research and argue the controlling case law at petitioner's suppression hearing (again, Claim A). Petitioner further argues that postconviction counsel suffered from a conflict of interest because they worked at the public defender office where, at that point, petitioner's original trial counsel worked as a supervisor.

This claim is noncognizable on federal habeas review. 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under Section 2254."); Powell v. Davis, 415 F.3d 722, 727 (7th Cir. 2005) (citations omitted) ("[W]hatever [a state'sized] rules] may be with respect to state-provided counsel at the postconviction stage, as a matter of

federal law a person has no such right.").

## **CONCLUSION**

For the reasons discussed above, the petition for a writ of habeas corpus is denied.


**ENTER:**     **November 5, 2010**

                                         _____
                                         **Robert W. Gettleman**
                                         **United States District Judge**